In the Matter of the Petition of KERMITT L. WATERS for Review of Application for Admission to the State Bar of Nevada, 1967.

No. 5534

December 12, 1968                      447 P.2d 661

*Robert A. Grayson* and *William H. Whitehead, III,* of Carson City, for Petitioner.

*Frank J. Fahrenkopf, Jr.,* of Reno, for State Bar of Nevada.

## OPINION

By the Court, THOMPSON, C. J.:

Kermitt L. Waters passed the 1967 bar examination. However, the Board of Bar Examiners is of the opinion that he does not possess the moral character required for admission to the bar of this State and has recommended that we deny admission. This proceeding is to review that recommendation.

The adverse recommendation of the Board was made because of its belief that the applicant made false statements on his application form and failed to disclose essential information bearing upon moral character; held himself out as an attorney licensed to practice in Nevada; and had practiced law in California without a license to do so and without associating California counsel. We have concluded that the foundation of the Board's recommendation to us is insubstantial, and order that Kermitt L. Waters be enrolled as an attorney entitled to practice law in this State.

The burden is upon the applicant to satisfy us that he should be admitted. SCR 72. He made a prima facie showing of good moral character. Attorneys, law school professors, and former employers have written letters attesting to his moral fitness for the practice of law. He has been employed in Nevada as a legal research assistant for the state highway department. His superiors find his work to be of good quality and his moral character beyond reproach. The local administrative committee submitted a unanimous report approving his moral qualifications for practice. He is a member in good standing of the State Bar of Texas. We turn, then, to consider the particular occurrences which gave birth to the Board's unfavorable report.

1. More than ten years ago the applicant attempted to deceive the University of Texas Law School by allowing another person to take the Law School Aptitude Test for him. The deception was discovered ten months later and the Dean of the Law School advised him that no formal action was contemplated but that it would be best if he transferred out. He left, subsequently applied to Baylor University School of Law, and

was accepted, but without disclosing the Texas deceit. The transcripts forwarded to Baylor from Texas did not mention that incident. In 1960, however, Baylor learned of that incident and dismissed him for "concealment of material facts in connection with his application for admission to the law school." The quoted statement appears on the Baylor transcripts.

The applicant attended John Marshall University Law School in Georgia for the academic year 1962–63 and earned satisfactory credits. In the fall of 1963 the Dean of Student Life at the University of Texas advised the Registrar of that school that Waters was entitled to a clear transcript and readmission to the University of Texas. Waters then applied for admission to Texas Southern University School of Law and received his LL.B. from that institution. Texas Southern accepted him with full knowledge of the LSAT deception. In 1966 he wrote the Texas bar examination and passed. The Texas Board had complete knowledge of the LSAT deceit and the Baylor dismissal for nondisclosure. Waters is presently a member in good standing of the Texas Bar.

The Nevada Bar application form contains the following question—"Have you ever been dropped, suspended, disciplined, or expelled by any college, university, or law school?" To this question the applicant answered "yes." That answer was the truth. But the question continues: "If so, give complete details." The applicant responded: "University of Texas— June 1960—now in good standing with University of Texas." The applicant did not disclose his dismissal from Baylor Law School. His lack of candor in this respect is the essence of the Board's conclusion that he is morally unfit.

Of course, a detailed answer should have been given. However, it does not necessarily follow that the failure to so answer amounted to an intentional deception. The applicant supplied the Board with transcripts of his college and law school records. The Baylor transcript reflected his dismissal and the reason therefor. When the secretary of the Board received that transcript, he suggested to the applicant that he write a supplemental letter of explanation, which he did. He also advised the local administrative committee of those circumstances, and that committee, in turn, reported favorably to the Board. When all relevant facts are considered we cannot conclude, as did the Board, that Kermitt Waters was guilty of a deliberate concealment of material information. The cases of March v. Committee of Bar Examiners, 433 P.2d 191 (Cal. 1967), and In re Application of Jolles, 383 P.2d 388 (Ore. 1963), support us.

This case is dissimilar to those where the applicant made a false statement deliberately to conceal significant information bearing upon moral fitness. See: In re Bowen, 84 Nev. 681, 447 P.2d 658 (1968); Carver v. Clephane, 137 F.2d 685 (D.C. Cir. 1943); In re Greenblatt, 2 N.Y.S.2d 569 (1938); In re Portnow, 2 N.Y.S.2d 553 (1938); State Bar v. Hull, 284 P. 492 (Cal.App. 1930); Spears v. State Bar, 294 P. 697 (Cal. 1930). In the case at hand the applicant answered truthfully that he had been dismissed from school. He failed to supply the details of that dismissal on the application form. That information was subsequently submitted and the deficiency corrected.

2. The remaining grounds for the Board's adverse recommendation are equally without persuasion since they appear to rest upon suspicion rather than solid fact.

(a) The charge that the applicant held himself out as a Nevada attorney stems from correspondence with two inmates of San Quentin Prison, California. One of them, a Robert Ford, knew that Waters was a Texas lawyer and initially wrote to him at his Texas address as "another Texan to at least investigate my case a little." That letter was forwarded to Waters at Carson City where he was then living. Thereafter a series of letters passed between them. The letters from Waters were written on printed letterhead bond paper stating: "Kermit L. Waters—Attorney at Law—P. O. Box 502, Childress, Texas 79201"—with the Texas address crossed out and his Carson City address typed in. This same letterhead was used by Waters in writing two short letters to the other San Quentin inmate, a Robert Mason. This letterhead, and nothing else of substance, prompted the Board's finding which was made apparently without regard to the following significant facts. Waters did not advise either prisoner that he was a Nevada lawyer. Each prisoner believed that Waters was a Texas lawyer and so testified on deposition. Neither Ford nor Mason were involved with the Nevada courts. Neither of them required the services of counsel licensed to practice in this state. Their legal problems were in California. The rules of professional conduct do not preclude a Texas attorney from corresponding with a California prisoner about his California case, nor do those rules suggest that letters from the Texas counsel are to be mailed from some point in Texas.

(b) The Board is of the opinion that the applicant had practiced law in California without a license to do so and without associating California counsel. That opinion likewise rests upon the applicant's correspondence with and advice to Ford and Mason. He was free to correspond with those prisoners, to visit with them, and to advise them. It is not uncommon for a lawyer to have clients in another state. The record discloses that the applicant had an agreement with Floyd Silliman, a California attorney who is also licensed to practice in Nevada, to act as associated counsel in the event a court appearance materialized. That eventuality did not happen. We find no substance to any of the Board's charges concerning the applicant's conduct with respect to Ford and Mason.

The ultimate responsibility for admission to the bar of Nevada is ours [SCR 39, 76; Ex parte Kellar, 79 Nev. 28, 31, 377 P.2d 927 (1963)] and we must, in each instance, exercise an independent judgment. We order that Kermitt L. Waters be admitted to practice law in Nevada.

COLLINS, ZENOFF, BATJER, and MOWBRAY, JJ., concur.