**In re Application of Alfred FEINGOLD For Admission to the Bar of the State of Maine.**

Supreme Judicial Court of Maine.

Oct. 27, 1972.

2. Benner v. Benner, 120 Me. 468, 469, 115 A. 202 (1921).

Charles W. Allen, Portland, for applicant.

Before DUFRESNE, C. J., and WEBBER, POMEROY, WERNICK and ARCHIBALD, JJ.

DUFRESNE, Chief Justice.

On May 15, 1969 the Board of Examiners for the Examination of Applicants for Admission to the Bar (Board of Bar Examiners), after investigation, found and certified under 4 M.R.S.A., §§ 802, 803 that Alfred Feingold is a person of good moral character and that he is fit to practice law within the State of Maine without examination as to learning in the law. This certificate was issued for presentation to the Supreme Judicial Court as a part of the documentary proof required to be furnished in said Court under Section 802 in support of a motion for admission to practice law within the State of Maine. The written motion for that purpose was formally filed with the Court by a member of its bar on April 21, 1970. After hearing, a single Justice of the Supreme Judicial Court denied the motion on the ground that the applicant's qualifications of "good moral character" were not satisfactory. From this adverse decision, Feingold appealed to the Law Court.

Although the point has not been raised, the matter of the jurisdiction of the Law Court to entertain this appeal suggests itself as an initial barrier to relief. Aware that the Supreme Judicial Court,

sitting as the Law Court, is of limited jurisdiction and can hear and determine only those matters authorized by statute and brought to it through the particular course of procedure prescribed by the statute or that outlined by court rule implementing enabling legislation (Collett v. Bither, 1970, Me., 262 A.2d 353), we will, as we must, consider and decide whether this Court, under 4 M.R.S.A., § 57, has the legal power to entertain the instant appeal. This jurisdictional legislative enactment reads as follows:

"The following cases only come before the court as a court of law: *Cases on appeal from* the Superior Court or *a single Justice of the Supreme Judicial Court*; questions of law arising on reports of cases, including interlocutory orders or rulings of such importance as to require, in the opinion of the justice, review by the law court before any further proceedings in the action; agreed statement of facts; *cases presenting a question of law*; * * *" (Emphasis supplied.)

The admission of attorneys to practice law in this State has been the subject of rules and regulations promulgated by the Supreme Judicial Court from early statehood[1] to the time of adoption of the Maine Rules of Civil Procedure effective December 1, 1959. Rule 87, M.R.C.P. provides that

"[a]pplications for admission to the bar shall be heard by a *single justice* of the Supreme Judicial Court in open court and at such time and place as he may designate." (Emphasis added.)

The corresponding statute on admission of attorneys from another state or the District of Columbia, 4 M.R.S.A., § 802, states, among other things,

---

1. See, Regulae Generales, August term, 1820, 1 Me. 410; April term, 1822, 1 Me. 410, et seq.; Rules for the Admission of Attorneys, 1842, 18 Me. 441–443; Rule 1 of the Rules of the Supreme Judicial Court, 1855, 37 Me. 567; 1881, 72 Me. 566; 1908, 103 Me. 519; 1930, 129 Me. 523; 1942, 138 Me. 366; 1952, 147 Me. 488.

"said Supreme Judicial Court may in its discretion, if satisfied as to his qualifications, admit such person to practice on motion made by some member of the bar of said court."

■ Statutory provisions purporting to confer authority upon the Supreme Judicial Court respecting the admission or reinstatement of attorneys to, and suspension or disbarment from, the practice of law are not exclusive. Such provisions are in aid of the authority and power inherent in the court. The same is true as to the particular procedure which the Legislature may have fashioned to obtain the legislative objectives. But, in this area, the judicial branch of the government, acting through the courts, has exclusive jurisdiction and the legislative branch, acting through the Legislature, can in no way limit this inherent power and authority of the court. Courts, however, may and frequently do honor implementing legislation, but clearly are not bound to do so. See, Barnes v. Walsh, 1950, 145 Me. 107, 72 A. 2d 813; Feldman v. State Board of Law Examiners, 1971, 8 Cir., 438 F.2d 699; People v. Buckles, 1968, 167 Colo. 64, 453 P.2d 404; Ex parte Alabama State Bar, 1970, 285 Ala. 191, 230 So.2d 519. Hence, the rule of court which requires hearings on applications for admission to the practice of law before a single justice of the Supreme Judicial Court would prevail over the statute, notwithstanding any potential inconsistency between them. Even though the ultimate responsibility is with the Supreme Judicial Court under its inherent power independently of any rule of court regulating the procedure, the Court will honor its own rule respecting the same, absent exceptional circumstances.

■ The Rules of the Supreme Judicial Court do not provide any appellate review by the full Bench of the denial of admission by a single justice of the Court. Did the Legislature provide such review by the Supreme Judicial Court sitting as a Law Court under 4 M.R.S.A., § 57? We an-

swer in the affirmative. An order and judgment of the single justice of the Supreme Judicial Court denying application for admission to practice law is a final order and judgment of the Court, albeit the Supreme Judicial Court. It represents a judicial conclusion upon the several issues that may arise concerning the right of an applicant to be admitted to the practice of law in this State, such as residency, the required active practice in another state, the good moral character of the applicant, etc. It is a "case presenting a question of law" within the meaning of 4 M.R.S.A., § 57 as amended by Public Laws, 1965, Chapter 356, § 1. It is a "case on appeal from * * * a single Justice of the Supreme Judicial Court" within the meaning of 4 M.R.S.A., § 57 as amended by Public Laws, 1959, Chapter 317, § 69. As stated in Dow v. State, 1971, Me., 275 A.2d 815, we view these statutory amendments following the adoption of our new rules of civil procedure as establishing a most comprehensive appellate review in *all* proceedings, whether civil, criminal or sui generis as in the instant case, since

" '[w]hen applied to legal proceedings it [the word "case"] imports a state of facts which furnish an occasion for the exercise of the jurisdiction of a court of justice. In this, its generic sense, the word includes all cases, special or otherwise.' " Mather v. Cunningham, 1910, 107 Me. 242, 78 A. 102.

■ The applicant in these proceedings may raise the issue, whether the finding of the single Justice that Feingold's qualifications of "good moral character" were not satisfactory, was made in the exercise of a sound judicial discretion from the evidence before him or otherwise, or whether, as contended by the appellant, the hearing before the Justice below was violative of his rights of due process under the Fourteenth Amendment to the Constitution of the United States. In the absence of any rule of the Supreme Judicial Court to the contrary, we hold that the Supreme Ju-

dicial Court sitting as the Law Court has been given the power by the Legislature under 4 M.R.S.A., § 57, as amended, to entertain and decide the instant appeal and we approve this type of appellate review from denials by a single justice of applications for admission to the practice of law. We note that the Legislature has specifically provided for similar appellate review in cases of disbarment and reinstatement. See, 4 M.R.S.A., §§ 854 and 858. No sound reason appears why a similar appellate procedure should not exist to test the propriety of the denial of admission to practice law made by a single justice of the Supreme Judicial Court.

We take this occasion to describe briefly the practice which has been uniformly followed in applications for admission to the bar of this State by members of the bar of another state or the District of Columbia. One of the justices of the Supreme Judicial Court is designated to act in a liaison capacity between the Court and the Board of Bar Examiners in all cases of admissions. The Board forwards the information in the file, including the National Board of Bar Examiners Confidential File, to the supervising justice for his inspection. If the file discloses matters requiring further inquiry or explanation, the supervising justice may refer the case back to the Board for additional investigation; ultimately, he would assign the case to a justice of the Supreme Judicial Court geographically located nearest to the residence of the applicant, for routine admission to the bar in the ordinary case, but, in cases where further investigation is indicated, for disposition of the application with suggested areas of inquiry. This, the assigned justice usually clears up with the candidate himself at one or more interviews. The matter may be expeditiously handled between the assigned justice and the candidate's sponsor of the motion for admission.

 In the instant case, the Justice below had several interviews with Mr. Feingold, initially to inquire about certain disturbing information contained in the file and, later, to evaluate certain disclosures made by Mr. Feingold himself or received ex parte in the course of the investigation. When it became apparent to the Justice below that serious doubts had arisen in his mind respecting Mr. Feingold's admission to the practice of law in this State, he informed the applicant that a hearing would be held concerning the issues which they had been discussing back and forth. A record was made of the proceeding and the Justice below indicated for the record the particulars of the total conversation which he had with the applicant with the suggestion that he may be cross-examined in regard to any part thereof. Mr. Feingold was granted complete freedom of action in presenting evidence to support his entitlement to admission to the Bar of Maine. We do commend the Justice below for his constant fairness towards the applicant, for the way in which he handled the hearing and for his sincere attempt to provide a proper judicial setting of the case. Hindsight, however, does dictate that a better procedure would have been to call upon the Attorney General of the State of Maine to act for the Court in the interests of the State of Maine from the very moment the Justice below had serious misgivings respecting Mr. Feingold's eligibility for admission. The motion for admission, if need be, could then be heard as a contested matter requiring judicial evaluation and determination without embarrassment to the presiding justice, in the same way as informations for disbarment and motions for reinstatement are heard by a single justice. See, 4 M.R.S.A., §§ 853, 858.

 The Attorney General, by statute, is directed to appear for the State in all proceedings in which the State is interested or in which the official acts of the Board of Bar Examiners is being called in question. 5 M.R.S.A., § 191. In analogous situations where removal of attorneys is involved, the Attorney General has the statutory power to initiate and prosecute informations whereby attorneys admitted

to practice law in this State may be stricken from the roll of attorneys. See, 4 M.R.S.A., § 851 et seq. Undoubtedly, in any case in which the Board of Bar Examiners refuses to issue the certificate of qualification under 4 M.R.S.A., § 802 then the Board itself should be made a party defendant and would defend its action through the Attorney General or privately retained counsel.

Mr. Feingold, the facts disclose, was admitted to the Bar of New York in 1927 and is now a resident of this State in Liberty, Maine. He has provided, as required by our statute, both a certificate of admission to practice in the court of last resort of New York and a letter of recommendation from the Chief Judge of that Court. He further received from the Board of Bar Examiners a certificate of good moral character and fitness to practice law in this State. The single Justice, however, denied the motion for admission because he felt that Mr. Feingold had not met the statutory requirement of good moral character. The underlying stated reason for the decision appears to be that Mr. Feingold's prior history indicated a propensity to engage in unwarranted character assassination and such propensity had not been corrected at the time of the hearing. Although our review of this decision would ordinarily consist in determining whether the Justice below in so finding abused a sound judicial discretion, we must initially determine whether the hearing itself was such that the appellant was accorded due process of law under the Fourteenth Amendment to the Constitution of the United States.

Procedural due process requires that an applicant for admission to the practice of law in this State be given an opportunity, when an issue is raised respecting his good moral character, to be heard on the charges and statements made against him and he must further be afforded the exercise of his right of confrontation by, and cross-examination of, the witnesses who supply the information adverse to him. Willner v. Committee on Character and Fitness, 1963, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224. Confidential and ex parte information in support of a judgment of exclusion will not satisfy the constitutional concept of due process unless sufficiently detailed knowledge of the adverse information be given to the applicant and a reasonable opportunity be afforded him to rebut or explain it. Application of Warren, 1962, 149 Conn. 266, 178 A.2d 528. It is essential in proceedings for admission to the bar, when the same is contested, that the recognized rules of evidence be observed. See, In re Crum, 1922, 103 Or. 296, 204 P. 948.

We do recognize that good character of the members of the bar is essential to the very integrity of the courts. We have the greatest interest in protecting the courts and the public from persons who lack the necessary qualifications of moral character and fitness. Although a lawyer licensed to engage in the general practice of law in one state has no absolute right by reason thereof to freely exercise such license in this state or any other state,[2] nevertheless, such right cannot be arbitrarily denied. The right is not a matter of grace and favor. Ex parte Garland, 1866, 4 Wall. 333, 379, 18 L.Ed. 366.

The United States Supreme Court has stated it in the following precise terms:

"A State cannot exclude a person from the practice of law or from any other occupation *in a manner* or for reasons that contravene the Due Process or Equal Protection Clause of the Four-

2. See, Application of Steelman, 1969, Alaska, 448 P.2d 817 (concurring opinion, at page 821); In re Avery's Petition, (1961) 44 Haw. 597, 358 P.2d 709; Baker v. Varser, 1954, 240 N.C. 260, 82 S.E. 2d 90; State ex rel. Boynton v. Perkins, 1934, 138 Kan. 899, 28 P.2d 765.

teenth Amendment." *Schware v. Board of Bar Examiners*, 1957, 353 U.S. 232, 238–239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796. (Emphasis added.)

On the other hand:

"A State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a rational connection with the applicant's fitness or capacity to practice law." *Schware,* supra.

The issue before us is whether Mr. Feingold was denied the opportunity to qualify for the practice of law in this State by reason of a proceeding which, it is contended, violated the Due Process Clause of the Fourteenth Amendment. It is not disputed that Feingold is fully eligible for admission to the bar in all respects other than good moral character.

The single Justice in his decree noted that his examination of the confidential file disclosed many highly complimentary letters. He further expressed his conviction that Mr. Feingold has been an able and successful attorney in New York and that he has been loyal to his clients and dedicated in their behalf. He recognized that Mr. Feingold's solicitude for others has been demonstrated by the fact that he has been willing especially to represent people engaged in unpopular causes or charged with offenses with which the general public would not be in sympathy, and this frequently without hope of financial gain.

However, certain incidents in Mr. Feingold's distant past caused worrisome concern to the Justice below, such as when in 1932 Mr. Feingold was indicted for criminal libel. This indictment was nolle prossed when Mr. Feingold apologized to the injured party. At about the same time, Mr. Feingold struck opposing counsel during an administrative hearing after counsel had referred to Mr. Feingold in a derogatory manner. In 1951, Mr. Feingold represented Mrs. Ellen Knauff in a very controversial immigration proceeding. This occurred at a very emotional period in this country and the case had attracted national attention. Faced with some difficulty with then Attorney General McGrath, Mr. Feingold told the Justice below that he had called the Attorney General "every name in the book." Again in 1963 Mr. Feingold made some derogatory remark out of court in the presence of others to the judge presiding over a case in which Mr. Feingold was involved. These remarks were occasioned by reason of adverse rulings of the judge. While these incidents happened quite some time ago, the single Justice felt that they did indicate a propensity to engage in improper personal attacks on the court or opposing counsel. While the single Justice was searching for some indication that Mr. Feingold had rid himself of this trait, ex parte information revealed that Mr. Feingold was personally involved in civil litigation in Waldo County in this State and that upon an adverse jury verdict, he assisted in the preparation of a motion for a new trial, signed and filed by his Maine attorney, in which there were allegations that the jury's verdict had resulted from perjury on the part of the plaintiff and unethical conduct of the plaintiff's attorney in arousing prejudice in the minds of the jury because of Mr. Feingold's religion. That the latter incident caused the single Justice to find Mr. Feingold's qualifications unsatisfactory is evident from several passages of the decree:

"The violence of this attack [allegations of motion for a new trial] disturbed me especially in view of the fact that this was the very type of conduct which I had told him I feared he would be likely to engage in.

\* \* \* \* \* \*

"I am particularly concerned that during the pendency of his efforts to be admitted here and with full knowledge of the fact that I find this very trait

**500**

worrisome, he should file an unsupported motion alleging that a jury returned a civil verdict against him because of his religion."

The efficient and orderly administration of justice cannot be successfully carried on if we allow attorneys to engage in unwarranted attacks on the court, opposing counsel or the jury. Such tactics seriously lower the public respect for both the Court and the Bar. It is the duty of an attorney to present his case in an orderly fashion and not to engage in conduct repugnant to the just determination of the issues in controversy. Turbulent, intemperate or irresponsible behavior is a proper basis for the denial of admission to the bar. In Re Latimer, 1957, 11 Ill.2d 327, 143 N.E.2d 20; Ex Parte Keeley, 1920, Or., 189 P. 885.

The Board of Bar Examiners did grant Mr. Feingold a certificate to the effect that he was a person of good moral character. The Board of Bar Examiners serves as an arm of the Court charged with the duty to investigate all applicants for admission to the bar and, although its certificate of good moral character and fitness to practice law in any particular case may be entitled to great weight, it is not conclusive on the court. Hallinan v. Committee of Bar Examiners of State Bar, 1966, 65 Cal.2d 447, 55 Cal.Rptr. 228, 421 P.2d 76; In Re Monaghan, 1966, 126 Vt. 53, 222 A.2d 665. But it is sufficient to make a prima facie showing of good moral character for the applicant who has the burden of proof to satisfy the court that he should be admitted. Petition of Waters, 1968, 84 Nev. 712, 447 P.2d 661.

Mr. Feingold was the only person to testify at the hearing before the single Justice. He did admit that he had assisted in the preparation of the motion for a new trial which contained the allegations of perjury by the plaintiff and religious prejudice by the jury. While it is true that actions of counsel which attempt to ignite the prejudices of a jury against the other party can be grounds for a new trial (66 C.J.S. New Trial § 36; 58 Am.Jur.2d. New Trial, § 60), a motion so grounded should have some reasonable supportive basis before it is brought. It must not be resorted to every time a client suffers an adverse verdict. It should never be used lightly. The single Justice found that the new trial motion, prepared by Mr. Feingold, signed and authorized by his Maine attorney who had tried the case, was "unsupported" and merely Mr. Feingold's way of striking back at opposing counsel.

Rule 11, M.R.C.P. provides that

"[e]very pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated.

\* \* \* \* \* \*

The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief *there is good ground to support it;* and that it is not interposed for delay.

\* \* \* \* \* \*

For a wilful violation of this rule an attorney may be subjected to appropriate disciplinary action. Similar action may be taken if scandalous or indecent matter is inserted." (Emphasis supplied.)

Mr. Feingold testified that his attorney urged him to settle the case because of the existing prejudicial atmosphere and, after the adverse jury verdict, gave that as the reason for having lost the case. The record, however, does not disclose any evidence which supports the single Justice's finding that the motion for a new trial was unsupported. Since it appears that the Justice below did not have before him as part of the evidence a full transcript of the trial in which the reference motion for a new trial was filed to determine from the record itself whether the motion was un-

supported in fact and since no testimony was proffered to deny the allegations in the motion for a new trial, Mr. Feingold was entitled to the prima facie effect which arises under Rule 11 by reason of the signature of a pleading by a party's attorney, which is, that there is good ground to support the pleading. Nowhere in the single Justice's opinion does it appear that he accorded any evidentiary cogency, or what, if any, he did give, to the presumptive impact of the rule, nor to the prima facie inference of good moral character which the Board's certificate legally allowed. The Justice below found that Mr. Feingold indicated no acknowledgment of wrongdoing in connection with the incident surrounding the motion for new trial and concluded from it that Mr. Feingold "still has the qualities which I feel would result in unethical conduct if he is admitted to practice here. I mean by this a willingness to resort to personal attacks on court and counsel."

This conclusion was based either on insufficient supportive evidence or on ex parte evidence not made part of the record. Furthermore, it was reached without due consideration being given to the certificate of the Board or to Rule 11, M. R.C.P. Without expressing any opinion on the qualifications of Mr. Feingold for admission to the practice of law in this State, but in order that a full and proper hearing be had in accordance with the requirements of due process, we must remand the case for a new hearing at which the Attorney General for the State of Maine and the attorney for the applicant may present such evidence as may be relevant in the circumstances.

The entry will be

Appeal sustained. Case remanded for a new hearing consistent with this opinion.

WEATHERBEE, J., did not sit.

All Justices concurring.