2010 ME 16

**In re Petition of HUSSON UNIVERSITY SCHOOL OF LAW.**

Supreme Judicial Court of Maine.

March 4, 2010.

## ORDER

### I. INTRODUCTION

[¶ 1] Before the Court is Husson University's request that the Court exercise its original jurisdiction over Maine attorneys and their admission to practice law in Maine by permitting its future Juris Doctor graduates to sit for the Maine Bar Examination. This is Husson's second attempt to obtain our approval for its anticipated graduates to take the bar exam, its first such application having been denied by this Court in June 2008. *See In re Petition of Husson Coll. Sch. of Law (Husson I)*, No. SJC–242, 2008 Me. Lexis 93 (June 3, 2008). After careful consideration of all of the submissions of Husson and other interested individuals and groups, and after a public hearing, we must again deny Husson's request.

### II. FACTS AND PROCEDURE

[¶ 2] In October of 2007, Husson submitted its first petition to this Court, acting as the Supreme Judicial Court in a matter of original jurisdiction, seeking approval for its Juris Doctor graduates to sit for the Maine Bar Examination. *Husson I*, 2008 Me. Lexis 93, at *6. In it, Husson disclosed its intent to create a law school

meant to provide a low cost legal education to students in northern and eastern Maine. *Id.* at *1.

[¶ 3] Following a public hearing and the consideration of substantial submissions and statements from numerous parties, we denied Husson's request without prejudice. *Id.* at *7–9, *14. We determined that three impediments precluded a decision in Husson's favor: (1) Husson's law school was not yet open, and thus there was no mechanism by which to gauge the quality of the legal education Husson intended to provide; (2) Husson had not yet had an opportunity to address the concerns raised by evaluators from the Maine State Board of Education, who considered Husson's request before that agency for approval to offer a Juris Doctor program, including the system for evaluating student performance, the reliance on electronic media for research, and the qualifications of the proposed law school leadership and faculty; and (3) Husson had failed to obtain American Bar Association accreditation or some comparable alternative. *Id.* at *9–14.

[¶ 4] On September 1, 2009, Husson renewed its application to permit its anticipated future Juris Doctor graduates to sit for the Maine Bar Examination [1] With its application, Husson submitted four attachments: (1) a letter from Michael W. Mullane, Dean, Husson Law School, to the ABA's Consultant on Legal Education reporting that Husson would not be submitting an application for accreditation from that body; (2) various documents describing the intended curriculum for the school, the education and qualifications of the proposed faculty, the plan for providing library resources and access, and the rationale for having the University library sup-

ply administrative services to support the law library; (3) a comparison of Husson's program to the ABA standards of accreditation; and (4) a proposed order granting the application.

[¶ 5] Husson's application materials detail a program largely identical to that proposed in its 2007 submissions. *See id.* at *1–4. In fact, the only change to Husson's proposed law school program since its 2007 application is the addition of three faculty members: two full-time professors and one part-time professor.

[¶ 6] On September 17, 2009, we published the application, with its attachments, on the Court's website. We also propounded to Husson a series of questions to elicit further information about both its program and its petition to this Court. Husson filed answers to those questions on October 9, 2009.

[¶ 7] We conducted a hearing on the matter on December 1, 2009, at the Penobscot Judicial Center in Bangor. During the hearing, we considered statements from Peter L. Murray, Esq., acting as representative of Husson; Laurie A. Gibson, Esq., on behalf of the Maine Board of Bar Examiners; and members of the Penobscot bar. We also considered the written submissions we received from the Maine Board of Bar Examiners, Maine State Bar Association, Maine Trial Lawyers Association, and Maine Association of Criminal Defense Lawyers.

## III. DISCUSSION

[¶ 8] Although Husson's initial filings in this second request sought blanket approval for its law school graduates to sit for the Maine Bar Exam, Husson has refined its request in subsequent filings. It

---

**1.** Since the time that its 2007 application was denied, Husson reports that it has obtained University status.

now seeks only "preliminary approval of a blueprint of its proposed law school program and a ruling from the Court that if this program is faithfully carried out in substantial compliance with the representations made in this Application, it will support eligibility of Husson graduates to take the Maine Bar." Husson also represents that it will not seek final approval for its graduates to take the Maine Bar until the school has been fully operational for two years.

[¶ 9] The difficulty in approving Husson's request, whether deemed "preliminary" or "final," stems from the fact that at least two of the three impediments to granting Husson's application that we identified in *Husson I* still exist:[2] Husson's law school has not opened its doors, and Husson has obtained neither ABA accreditation nor any substantially similar alternative. We address both of these impediments in turn.

## A. ABA Accreditation

[¶ 10] Among other provisions, M. Bar Admission R. 10(c) requires that any applicant seeking to take the Maine Bar Examination shall produce to a board of bar examiners satisfactory evidence establishing that he: (1) graduated from a law school that had "received its provisional or final accreditation from the American Bar Association by the time of the graduation of the applicant"; (2) graduated from a law school in another jurisdiction that is accredited by that jurisdiction, has been admitted to practice in that jurisdiction, and has been actively engaged in the practice of law there for at least three years; (3) graduated from a foreign law school that is equivalent to an ABA-accredited law school and has either been admitted to

practice in that country, or has passed the bar examination in at least one jurisdiction within the United States and has been in active practice in that jurisdiction for at least three years; or (4) has completed two-thirds of the requirements for graduation from an ABA-accredited law school, and has completed at least twelve months of study with a practicing attorney. M. Bar Admission R. 10(c)(2)-(5). Title 4 M.R.S. § 803(2) (2009) echoes these requirements.

[¶ 11] As a threshold issue, Husson contends that, as the ultimate entity governing the admission of attorneys to the Bar of the State of Maine, this Court has the authority to grant exceptions to both the relevant statutes and bar admission rules requiring ABA accreditation. We agree with this interpretation of the statutes and rules, as we did in *Husson I,* and recognize that among the three branches of government, it is the Judicial Branch, specifically this Court, that has the inherent authority and exclusive jurisdiction over the admission of attorneys to the practice of law in this state. 2008 Me. Lexis 93, at *6, 7–8 n. 3; *see also In re Application of Feingold,* 296 A.2d 492, 496 (Me.1972).

[¶ 12] Husson encourages us to exercise this authority and jurisdiction by announcing in advance of its operation of a law school that its future graduates may sit for the Maine Bar Examination despite Husson's lack of ABA accreditation. Although it reports that it is willing to have its program judged by ABA accreditation standards and is confident that it would meet those standards despite the fact that it has not yet begun operating as a law school, Husson nevertheless declines to

---

2. Husson has also not had an opportunity to address concerns raised by the Maine State Board of Education evaluators, but many, if not most, of those concerns can only be addressed after the law school is operational.

have the ABA itself evaluate Husson's proposed law school to determine if it meets those standards. Husson identifies only one reason why it refuses to subject itself to the ABA accreditation process at this time: Husson's faculty voted more than fifteen years ago to eradicate a system of faculty tenure, and the ABA's accreditation standards require that, in order to "attract and retain a competent faculty," a law school must have an established "academic freedom and tenure" policy, and "shall afford to full-time clinical faculty members a form of security of position reasonably similar to tenure."[3] 2009–2010 ABA Standards for Approval of Law Schools 405. Husson indicates in its filings that it will apply for ABA accreditation as soon as the ABA's faculty tenure requirements are revised, and anticipates that such application will be filed no later than 2015, for approval in 2017. If the ABA declines to change its standard on faculty tenure, however, it appears unlikely that Husson will ever apply for ABA accreditation.

[¶ 13] Whatever the reason for its decision not to seek ABA accreditation at this time, Husson asserts that a comparable evaluation by some other entity should be sufficient to support its application. In *Husson I*, we agreed that ABA accreditation might not be the only acceptable review process, and invited Husson to identify another existing process to accomplish the same task. 2008 Me. Lexis 93, at *12–13.

[¶ 14] In this, its second application, Husson has failed to identify another existing review process, and instead invites us to create a new review process for its benefit. In the absence of any other mechanism to assure the quality of the legal education Husson proposes to provide to its future law students, Husson encourages the Court to devise a set of state standards by which Husson's program may be judged, and to create a "Law School Evaluation Commission" tasked with determining if Husson's program meets those standards. More specifically, Husson proposes that we take some extraordinary steps: first, that we create a set of standards or criteria for determining whether a law school is providing a sound legal education;[4] second, that we establish a body to determine whether Husson meets those standards; and, third, that we pre-approve the program by agreeing now that members of Husson's first three graduating law school classes will be eligible to sit for the Maine Bar Examination.

[¶ 15] Husson's decision not to apply for accreditation from the ABA, whether based on a business or policy decision not to offer tenure, or because such a process would be expensive, provides an insufficient basis for us to take these extraordinary steps, and therefore we decline Husson's request.

3. We also discern another area in which Husson may not plan to wholly accommodate the ABA's accreditation standards: the library requirements. Although Husson represents that it will provide a complete print collection of required materials, as the ABA requires, it also indicates that it does not plan to maintain an autonomous law library, and that it will rely heavily on electronic research materials.

4. Implicit in Husson's request that we create standards for evaluating its law school is its assumption that we will agree that Husson should not be required to offer tenure to its law faculty. The advisability of tenure is the topic of an ongoing national debate, however, and considering this question would require us to delve into fundamental notions of academic freedom and didactic theory. We are not persuaded that any sufficiently compelling need exists for us to resolve this important and complex policy question.

## B. Law School Not Yet Open

[¶ 16] The fact that Husson's law school has not yet begun operations presents a corollary impediment. Husson has already requested and obtained approval from the Maine State Board of Education to offer a Juris Doctor degree to its students. *See* 20–A M.R.S. § 10704–A (2009); 10 C.M.R. 05 071 149–4 to 149–6 § 2(B) (2009). Our decision not to approve Husson's application creates no legal barrier that prevents Husson from opening its doors to students. Although we certainly appreciate Husson's desire to provide some assurance to its incoming students that they will be allowed to take the bar exam once they have graduated from the law school, Husson concedes that there is simply no precedent, in this state or nationally, for a state's highest court to grant law students the right to take a bar exam before the law school even exists. Further, unless and until Husson actually begins operating its law school, it is impossible for the ABA, or any other body, to evaluate the quality of the education Husson's students will receive.

[¶ 17] Like any other nascent law school, and in the absence of any other existing accrediting body, Husson may apply to the ABA for provisional accreditation after it has been in operation for one year. *See* 2009–2010 ABA Standards for Approval of Law Schools, Rule of Procedure for Approval of Law Schools 4(c). It could then demonstrate its compliance with all of the other ABA standards while the ABA is reviewing its position on the issue of tenure. If, at the conclusion of the evaluative processes, Husson has met all of the other criteria, and the ABA decides not to change its standard on tenure, Husson must then decide whether to revisit its own policy on tenure.

[¶ 18] Husson's request, either for preliminary or for final approval, for its future law school graduates to sit for the Maine Bar Examination is denied.

FOR THE COURT[5]

/s/ Leigh I. Saufley, Chief Justice.

/s/ Jon D. Levy, Associate Justice

/s/ Warren M. Silver, Associate Justice

/s/ Ellen A. Gorman, Associate Justice

/s/ Joseph M. Jabar, Associate Justice

---

5. This Order is approved after conference of the Court, all of the Justices concurring therein, with the exception of Justice Alexander and Justice Mead, who were recused.