Submitted November 9, petition denied with leave to amend November 17, 1954, argued February 2, peremptory writ issued February 16, 1955

# STATE EX REL. BUSHMAN v. VANDENBERG

276 P. 2d 432
280 P. 2d 344

*George H. Proctor,* of Klamath Falls, for the petitioner.

No appearance for respondent.

BRAND, J.

The State of Oregon on the relation of Andrew Joseph Bushman has presented in this court an original petition for an alternative writ of mandamus against the Honorable David R. Vandenberg, circuit judge. Bushman was indicted by the grand jury of Klamath County. He was duly arraigned and counsel was ap-

pointed for him. He then filed in the criminal case a motion to set aside the indictment. Thereafter the prosecutor filed a motion for a change of judge, pursuant to ORS 14.220 and 14.230. Paragraph V of the petition for the writ reads as follows:

"That on the 12th day of October, 1954, defendant disallowed plaintiff's objection to said application and refused and still refuses to hear plaintiff's motion to set aside indictment No. 54-48C and to proceed further with the said criminal action, although it was and is the duty of defendant to proceed with the determination of the said criminal action which is now pending."

A memorandum of authorities is presented in support of the contention that the statute in question is unconstitutional. It provides, in substance, that no circuit judge shall sit to hear or try any suit, action, matter or proceeding when an application in writing requesting a change of judge shall have been filed as prescribed by law. Under the wording of the statute no showing of bias or prejudice is required in order to disqualify a judge.

■■ If this matter were properly before us, a serious question of constitutional law would be involved, but we are of the opinion that we should not decide that issue upon the meager record now presented. In the petition for the writ we are told only that some objections of unknown tenor were "disallowed" by the judge, and that he refused and still refuses to hear Bushman's motion to set aside the indictment. The petition fails to set forth the objections made by the petitioner to the motion for change of judge. It also fails to set forth whether the court allowed the application for change of judge, or what, if any order or orders in the matter were made by the judge. Such applica-

tion recited that it was made pursuant to ORS 14.220 and 14.230. If it was allowed by the judge, it may be that the constitutional issue now suggested would require consideration by this court. But the petition contains patent ambiguity. For all we know, the judge may not have made any ruling at all on the application for a change of judge, or any holding that as a matter of law he was disqualified thereby. Paragraph 2 of ORS 14.220 provides that:

> "* * * If the order is not entered within five days after filing of the application, or if there is only one judge in the court in which the cause, matter or proceeding is pending, the county clerk shall without order and as a matter of course notify forthwith the Chief Justice of the Supreme Court and he shall send a judge to try it * * *."

There is but one judge in the Thirteenth Judicial District, namely, the defendant herein. Thus it may be that he has, in his own discretion, uncoerced by the statutory provision or by the application, voluntarily disqualified himself in the case. If that be true, then there is no constitutional question before us. Constitutional questions will not ordinarily be determined by this court unless their determination is essential to the disposition of the case. *State ex rel. v. Malheur County Court*, 46 Or 519, 81 P 368; *McKinney v. Watson*, 74 Or 220, 145 P 266; *Winslow v. Fleischner et al.*, 110 Or 554, 233 P 922, 112 Or 23, 228 P 101, 34 ALR 826.

The petition for the alternative writ is denied with leave to file an amended petition.

ORIGINAL PROCEEDING IN MANDAMUS

*George H. Proctor*, Klamath Falls, argued the cause and filed a brief for petitioner.

*Wolf D. von Otterstedt,* Assistant Attorney General, Salem, argued the cause as amicus curiae for respondent. With him on the brief was Robert Y. Thornton, Attorney General, Salem.

Before WARNER, Chief Justice, and TOOZE, ROSSMAN, LUSK, BRAND and PERRY, Justices.

LUSK, J.

This is an original proceeding in mandamus. The alternative writ discloses that the relator was indicted in Klamath County for the crime of contributing to the delinquency of a minor, and that on October 4, 1954, while the criminal action was pending on a motion to set aside the indictment before the defendant, the Honorable David R. Vandenberg, circuit judge of the thirteenth judicial district (Klamath County), the district attorney, acting pursuant to the provisions of ORS 14.220 and 14.230, filed an application in writing requesting a change of judge, and that Judge Vandenberg refused to hear the motion to set aside the indictment or to proceed further in the case solely because of the filing of such application for change of judge. Claiming that the provisions of the statute cited are unconstitutional, the relator seeks a mandate of this court commanding Judge Vandenberg to hear the motion and to proceed with the determination of the criminal action. Judge Vandenberg filed an answer which in effect admitted the allegations of the alternative writ and alleged that under ORS 14.220 and 14.230 he was bound to grant the application for change of judge and step aside.

The case was submitted to the court on the foregoing pleadings.

Judge Vandenberg has not filed a brief nor re-

quested the privilege of making an oral argument, either in person or by attorney. The attorney general asked and was granted permission to file a brief amicus curiae, and the court invited him to argue the case orally, lest the decision of an important constitutional question go by default. The court wishes to acknowledge its indebtedness to the attorney general for the assistance it has received from the scholarly brief filed by him and the able oral argument of his assistant, Mr. von Otterstedt.

The statute the constitutionality of which is drawn in question grants the right to a party to a judicial proceeding in the Circuit Court or his attorney to disqualify the judge of the court from exercising his judicial functions in the particular case by merely filing an application for a change of judge. So far as now material, the statute reads:

14.220. "(1) No judge of a circuit court, including such judge when sitting in a department of probate or of domestic relations or a judge hearing or trying probate or domestic relations matters or proceedings in counties in which such matters or proceedings are heard or tried by the circuit court or a judge thereof, shall sit to hear or try any suit, action, matter or proceeding when an application in writing requesting a change of judge shall have been filed as provided in ORS 14.230 or 14.240.

"(2) In such case the presiding judge shall transfer forthwith the cause, matter or proceeding to another department of the same court, or call in a judge from another department of the same court. If the order is not entered within five days after filing of the application, or if there is only one judge in the court in which the cause, matter or proceeding is pending, the county clerk shall without order and as a matter of course notify forthwith the Chief Justice of the Supreme Court and

he shall send a judge to try it; or, if the convenience of witnesses or the ends of justice will not be interfered with and the action or suit is of such a character that a change of venue may be ordered, the Chief Justice may send the case for trial to the most convenient court; provided, that the issues in the cause may, upon the written stipulation of the attorneys in the cause agreeing thereto, be made up in the district of the judge to whom the cause has been assigned.''

14.230. ''Any party to or any attorney appearing in any cause, matter or proceeding in a circuit court, including matters or proceedings in a department of probate or of domestic relations in those counties where probate or domestic relations matters or proceedings are heard or tried by the circuit court or a judge thereof, may file an application in writing requesting the change of judge at any time prior to final determination of such cause, matter or proceeding in uncontested cases, and in contested cases within 10 days after answer or objection has been filed or within 10 days after the assignment, appointment and qualification or election and assumption of office of another judge to preside over such cause, matter or proceeding * * * .''

The statute was passed in 1947 (Oregon Laws 1947, chs 145, 162). It amended previous provisions known as ''the affidavit of prejudice'' statute under which a judge was prohibited from hearing a case when it was established that he was prejudiced against a party or an attorney. Such prejudice, the former statute provided, could be established by ''motion supported by affidavit that the judge before whom the cause, matter or proceeding is pending is prejudiced against such party or attorney, so that such party or attorney can not, or believes that he can not, have a fair and impartial trial or hearing before such judge, and that

it is made in good faith and not for the purpose of delay''. OCLA §§ 1-501, 1-502, as amended by Oregon Laws 1945, ch 266.

The superseded statute was sustained against the claim that it constituted an unwarranted abridgement of judicial power in *U'Ren v. Bagley,* 118 Or 77, 245 P 1074, 46 ALR 1173. See, also, *State Capitol Commission v. McMahan,* 160 Or 83, 86, 83 P2d 482. It is contended that these decisions control this case. For reasons to be presently stated we do not agree.

The case involves a consideration of the relation of the legislature to the judiciary. The question is whether, under our system of government, with its principle of the separation of powers, the legislature has by the enactment in question imposed unwarranted restraints on the courts in the exercise of their judicial functions. Unlike the federal constitution, the constitutions of most, if not all of the states contain express provisions respecting the three co-ordinate and independent departments of government. They spell out what is implicit in the organic law of the nation. In the Oregon constitution those provisions are found in Art. III, § 1, which reads:

"The powers of the government shall be divided into three separate departments—the legislative, the executive, including the administrative, and the judicial; and no person charged with official duties under one of these departments shall exercise any of the functions of another, except as in this constitution expressly provided."

As stated in 11 Am Jur 880, Constitutional Law § 182, "Although there may be a blending of powers in certain respects, in a broad sense the safety of our institutions depends in no small degree on the strict

observance of the independence of the several departments." And, with respect particularly to the judiciary, it was said by this court, speaking through Mr. Justice WOLVERTON in *Thomas v. Portland,* 40 Or 50, 52, 66 P 439, "By reason of the distribution of powers under the constitution, assigning to the legislature and the judiciary each its separate and distinct functions, one department is not permitted to trench upon the functions and powers of the other." See, also, *Macartney v. Shipherd,* 60 Or 133, 142, 143, 117 P 814, Ann Cas 1913D 1257. Not only does Art III, § 1 of the constitution prohibit the legislature from exercising the functions and powers of the judiciary, but under the principle of the separation of powers the legislature is likewise prohibited from "unduly burdening or interfering with the judicial department in its exercise thereof." Rottschaefer on Constitutional Law, p. 52. Thus, in *State ex rel. Kostas v. Johnson,* 224 Ind 540, 69 NE2d 592, 168 ALR 1118, the court held that a statute limiting the time within which a judge could decide a case violated the section of the Indiana constitution providing for the distribution of the powers of government and which furnished the model for Art. III, § 1 of our constitution. The court there said:

> "Courts are an integral part of the government, and entirely independent, deriving their powers directly from the Constitution, in so far as such powers are not inherent in the very nature of the judiciary. A court of general jurisdiction, whether named in the Constitution or established in pursuance of the provisions of the Constitution, cannot be directed, controlled, or impeded in its functions by any of the other departments of the government. The security of human rights and the safety of free institutions require the absolute integrity and freedom of action of courts."

In the course of an excellent discussion of the general subject in Rottschaefer, op. cit, p. 55, it is said:

"* * * The ultimate source of the judicial power possessed by any court established to exercise the functions conferred upon the judicial department established by the constitution is that grant of power. This is true whether that court be established by the constitution or by the legislature, and whether its jurisdiction be defined by the constitution or by the legislature. The judicial power thus conferred is generally held to include not merely that of deciding cases but also incidental powers necessary to the effective performance of that primary function."

■ In *U'Ren v. Bagley* the court cited decisions from nine other states sustaining the constitutionality of statutes similar to that then before the court. See, annotations, 46 ALR 1179, 5 ALR 1275. Under the statutes of some states the bias or prejudice must be shown as a matter of fact (30 Am Jur 784, Judges § 74), while under many statutes "it is necessary for the application or affidavit to set forth the facts showing bias or prejudice of the particular judge from which a sane and reasonable mind might fairly infer bias or prejudice on the part of the judge of a personal nature calculated to impair the judge's impartiality and to sway his judgment, or of such a character as would disqualify him by reason of public policy" (48 CJS 1090, Judges § 94). Such is the character of affidavit required by § 21 of the Judicial Code, 28 USCA § 144. It is the rule in the federal courts that when an affidavit conforming to these requirements has been filed it is the duty of the judge to proceed no further with the case, no inquiry as to the truth of the charge being authorized. The judge has the right to determine the legal sufficiency of the facts stated but

no right to pass upon their truth or falsity. *Berger v. United States,* 255 US 22, 65 L ed 481, 41 S Ct 230.

In *U'Ren v. Bagley* it was said: "To determine with precision the boundary between the respective co-ordinate branches of our government has ever been a difficult thing for the courts to do. The question at bar is in the twilight zone." 118 Or 81. It was in the "twilight zone" because the statute did not require the charge of prejudice to be supported by the statement of any facts. There can be no doubt, however, that the legislature may, without unduly encroaching on judicial power, provide by law for the disqualification of judges for bias or prejudice if the facts establishing such bias or prejudice are required to be stated.

It will have been observed that the authorities and statutes to which we have referred all have to do with the disqualification of a judge for bias or prejudice and the power of the legislature in that regard. The statute sustained in *U'Ren v. Bagley* was enacted for the purpose of enabling a party to disqualify a judge in a particular case for prejudice against the party or his attorney, and the method of showing the existence of such prejudice, or, at least, of the belief that it existed, was provided to be an affidavit to that effect. The affiant was required to swear that the affidavit "was made in good faith and not for the purpose of delay." Its essential character was not altered because there was no requirement that the facts supporting the claim of prejudice were not required to be stated, nor because of the impossibility of proving that the affidavit was false or the application not made in good faith, but for unauthorized purposes, nor because the procedure was "shamefully abused". *U'Ren v. Bagley,* supra, 118 Or at p. 87.

But here we are not dealing with a statute prescribing the procedure for getting rid of a judge disqualified for bias or prejudice. The legislature has now invested litigants and their attorneys with the power to remove duly appointed or elected and qualified judges from the bench in particular cases at will—for good cause, bad cause, or no cause at all. It may be true that the same thing was possible under the former statute, but that was only by an *abuse* of the statute, not by using it for the purposes which it was manifestly intended to accomplish. Therein lies the distinction between the two laws and the reason why *U'Ren v. Bagley* does not control the decision here.

So far as we are advised no other state in the union has enacted a similar statute except California. By § 170.5 of the Code of Civil Procedure of the state of California it was provided that a party or his attorney to any cause or proceeding pending in a superior or municipal court, except the people or district attorney in a criminal case, might file a peremptory challenge in writing of the judge assigned to try or hear the case or pending matter. Thereupon it was provided that another judge should be assigned to try the cause or hear the matter. This statute was held unconstitutional by the District Court of Appeal in *Daigh v. Shaffer*, 23 Cal App2d 449, 73 P2d 927, and later by the Supreme Court of California in *Austin v. Lambert*, 11 Cal2d 73, 77 P2d 849, 115 ALR 849. We quote from the Austin case:

> "* * * Nothing is said in the new section about bias, prejudice, interest, or any other recognized ground for disqualification. No showing, ex parte or otherwise, is required and no reason need be given for thus stripping the judge of his judicial functions. No more is required to accomplish that

result than the arbitrary and undisclosed reason and purpose of the litigant or his attorney.

"No statute has been brought to our attention or discovered by research which has gone to the length of section 170.5 in thus placing the exercise of judicial power, duty and responsibility subject to the whim and caprice of a lawyer or litigant, and no court decision has been cited or obviously could be cited upholding such an arbitrary provision."

The court then distinguished the statutes of other states which provide for some showing of disqualification by affidavit and proceeded:

"But to put in the hands of a litigant uncontrolled power to dislodge without reason or for an undisclosed reason, an admittedly qualified judge from the trial of a case in which forsooth the only real objection to him might be that he would be fair and impartial in the trial of the case would be to characterize the statute not as a regulation but as a concealed weapon to be used to the manifest detriment of the proper conduct of the judicial department. The well-recognized limitations on legislative regulations of such matters in other jurisdictions, both state and federal, were available when section 170.5 was enacted. In none of them is the arbitrary method of administering the remedy adopted in enacting the statute under attack approved or countenanced. It must therefore be held to be an unwarranted and unlawful interference with the constitutional and orderly processes of the courts."

The court then answered the contention urged in favor of the validity of the statute that it was supported by the analogy to the peremptory challenge of a juror by pointing out that one difference, at least, between the situation of the juror and that of the judge was that the judge had taken an oath to discharge his judicial duties while the peremptory challenge to a

juror is exercised during the process of examining the jurors as to their qualifications and before the prospective juror has been sworn. There are other obvious differences, but we need not stop to dwell upon them.

The attorney general argues that *Austin v. Lambert* should not be persuasive in Oregon because of the difference in the constitutions of the two states. In California, it is pointed out, the trial courts are constitutional courts, while in Oregon the only constitutional court is the Supreme Court, Art. VII (A), § 1, and the circuit courts are governed by § 2 of that article which reads in part: "The courts, jurisdiction, and judicial system of Oregon, except so far as expressly changed by this amendment, shall remain as at present constituted until otherwise provided by law." But the circuit courts are none the less a part of the judicial branch of the government and are under the protection of Art. III, § 1 of the constitution. Their right to be free from undue legislative interference with the exercise of their judicial powers does not turn on whether they are named in the constitution, but derives from the principle of the separation of powers. *State ex rel Kostas v. Johnson,* supra; Rottschaefer, op. cit., supra. We have already said of the statute under consideration in a case where its constitutionality was not attacked, "Such a statute constitutes an encroachment by the legislative branch upon the normal powers and functions of the judicial department of the government." *Rex Mtge. Loan Co. v. Stanfield,* 194 Or 698, 701, 244 P2d 173. The argument based on the fact that the circuit courts of Oregon are not constitutional courts, proves too much; if yielded to it could deprive those courts of their independence and their essentially inherent power properly to discharge their judicial functions. It would make them subservient to the legisla-

ture, instead of being a branch of the state government of equal dignity.

Some conception of the extent to which the encroachment on the normal judicial functions goes as the result of the operation of the statute may be gained by resort to information in the files of the chief justice of this court. In 15 of the 17 judicial districts of the state the statute was invoked 87 times in the year 1953 and 82 times in 1954. These statistics do not include the fourth judicial district (Multnomah County) with its 11 judges; Lane County in the second judicial district (2 judges); Coos County in the second judicial district (1 judge); the fifth judicial district (2 judges); Yamhill County in the twelfth district, or Benton and Lincoln counties in the twenty-first district (2 judges). This is because ordinarily the chief justice is not called upon to assign a judge on motion for a change of judge in the districts and counties listed, but the matter is taken care of locally. Hence, there is no information available to us as to the number of such motions filed in those courts. We think we are warranted in saying, however, in view of the vast amount of litigation in Multnomah County and the crowded dockets in Clackamas County (the fifth judicial district) and Lane County and some of the other omitted counties, that the figures we have given represent but a fraction of the total number of such motions filed annually throughout the state. And, of course, no figures can reflect the demoralization of court dockets and the interference with the orderly conduct of judicial business that are the inevitable consequence of this procedure.

One other matter needs to be noticed. The alternative writ contains the following allegations:

"That on the 7th day of October, 1954, the said Frank R. Alderson filed an affidavit that the de-

fendant was prejudiced against him in said criminal action. Thereafter plaintiff filed a motion to strike said affidavit from the records and files."

The attorney general argues that if the challenged statute should be held unconstitutional the result would be the revival of the affidavit of prejudice statute, under the rule that when an amendatory section of an act is declared unconstitutional the section sought thereby to be amended remains in full force and effect. *Skinner v. Davis,* 156 Or 174, 189, 67 P2d 176. Therefore, it is said, in any event Judge Vandenberg is disqualified. The difficulty with the contention is that the only knowledge we have of the contents of the affidavit of prejudice is afforded by the allegations quoted, and these do not show a compliance with the requirements of the former statute. Hence, we are not called upon to decide whether the rule invoked is applicable to this case.

With due regard to the deference due from the court to an act of the legislative assembly, and having in mind the presumption of validity of such an act always to be indulged, we are nevertheless of the opinion that the statute here in question contravenes the principle of the separation of powers as declared in Art. III, § 1 of the constitution of this state and. is unconstitutional and void.

It is therefore ordered that a mandatory writ issue commanding the defendant to proceed with the determination of the criminal action entitled *The State of Oregon v. Andrew Joseph Bushman* pending in the Circuit Court for Klamath County.