Argued February 5, reversed June 17, respondent's petition for rehearing
denied July 13, 1976

# SADLER, *Appellant,*
*v.*
# OREGON STATE BAR, *Respondent.*

550 P2d 1218

*Margaretta Eakin,* Portland, argued the cause for appellant. On the briefs were N. Robert Stoll, John R. Faust, Jr., and Hardy, Buttler, McEwen, Weiss & Newman.

*Joseph D. Robertson,* Salem, and *Howard A. Rankin,* Portland, argued the cause for respondent. With them on the brief were Garrett, Seideman & Hemann, Salem, and Rankin, Walsh, Ragen & Roberts, Portland.

McALLISTER, J.

## McALLISTER, J.

The plaintiff, Russell Sadler, brought this suit under ORS 192.450(2) to compel the Oregon State Bar to immediately

"A. Provide Plaintiff with a copy of any and all communications received at any time by the State Bar or related county Bar Associations relating to Attorney Jason Lee's professional conduct, and copies of any documents disposing of matters raised in those communications.

"B. Provide Plaintiff with a copy of any and all communications, received since the May 28, 1974 primary election relating to Attorney Jason Lee's election conduct and copies of any documents indicating the disposition of matters raised in those communications."

on the ground that the records were public records under the Inspection of Public Records Law, ORS 192.410 to ORS 192.500.

The trial court found the records were exempt from disclosure under ORS 192.500(2)(c) and denied the right of inspection. The plaintiff has appealed.

Before he filed this suit Sadler had both orally and in writing requested the records from the Bar. When his request was denied Sadler petitioned the Attorney General to order disclosure of the records. The Attorney General ordered the Bar to disclose the records. Again the Bar refused. Sadler then brought this suit. The Attorney General appeared in the court below as amicus curiae on behalf of Sadler.

Plaintiff first contends that the trial court erred in holding that defendant need not affirmatively plead that the records were confidential communications as defined in ORS 192.500(2)(c). In view of the disposition which we make of the case on the merits it is not necessary to consider this pleading question.

Plaintiff next contends that the records are not exempt from public inspection under ORS

192.500(2)(c). The statute provides in pertinent part as follows:

"(2) The following public records are exempt from disclosure under ORS 192.410 to 192.500:

\* \* \* \* \*

"(c) Information submitted to a public body in confidence and not otherwise required by law to be submitted, where such information should reasonably be considered confidential, the public body has obliged itself in good faith not to disclose the information, and when the public interest would suffer by the disclosure; \* \* \*"

The trial court made an *in camera* inspection of the records sought by the plaintiff and concluded that they were exempt under the above-quoted section.

Plaintiff contends that the Bar failed to prove that the records qualified as exempt records under the provisions of ORS 192.500(2)(c). It should be noted here that ORS 192.490(1) provides that "the burden is on the public body to sustain its action."

The first requirement is that the information requested was submitted to the Bar in confidence. When the Lee records were accumulated Supreme Court Rule 32 was in effect. It provided:

"HEARINGS NOT PUBLIC. Unless otherwise ordered by the Board, the investigation and hearings of disciplinary matters shall not be public, nor, unless ordered as aforesaid, shall the records of the proceedings in a disciplinary matter, prior to recommendation of the Board to the Supreme Court, be open for inspection, except to officers and governors of the state bar, to the investigator, to counsel for the state bar, to members of the trial committee, to the grievance committee, to the accused and to his attorney. The files and records of each grievance committee and each trial committee are the property of the state bar. Nothing in this section shall be construed to prevent the Board or its designate from advising the complainant of the status of any charge he has preferred against a member of the state bar."

Assuming that any person who complained to the Bar about an attorney's conduct was aware of Rule 32,

he would know that many persons, including the lawyer complained about, could examine the record.[1] Rule 32 allows the Bar on its own motion to make the records public.

There is no evidence in the record that any person who complained to the Bar of the conduct of Jason Lee did so on condition or with the understanding that his complaint would be held in confidence. In the statement of the executive secretary of the Bar dated December 12, 1974 there is no suggestion that any complainant had ever declined to complain against a member of the Bar unless his complaint was held in confidence.

Rule 32 has been replaced by Rule 45, which makes all disciplinary records public as soon as a formal written complaint in a disciplinary proceeding is filed by the state Bar against an accused member.

Under both Rule 32 and Rule 45 the Bar would be required to advise a complainant that if his complaint resulted in the imposition of discipline the records would become public records and that under Rule 45 the records would become public records if a formal written complaint was filed against the person complained about. It is clear, therefore, that the rules making disciplinary records confidential in their earlier stages was not for the benefit of the complainant, but for the lawyer complained against.

The Bar argues and the trial court found that the public interest would suffer by disclosure. The two primary points made are that (1) individuals might not feel so free to complain if they knew their complaints might be made public, and (2) that frivolous or unfounded complaints would jeopardize a legal career.

---

[1] The records are available to officers and governors of the state Bar, to the investigator, the counsel for the state Bar, members of the trial committee, to the grievance committee, to the accused and to his attorney and possibly witnesses called to testify for the Bar or for the attorney complained of.

See *McLaughlin v. Philadelphia Newspapers, Inc.,* 348 A2d 376, 380-382 (Pa 1975). Plaintiff, on the other hand, contends that the public interest would be best served by opening up the grievance procedure so that the public could be assured that high ethical standards were being maintained by the legal profession. This court noted the importance of providing the machinery for open criticism of the Bar in *Ramstead v. Morgan,* 219 Or 383, 400, 347 P2d 594, 77 ALR2d 481 (1959), where it stated:

"* * * We regard it as important, therefore, that there should be no impediment to free criticism of the bench and bar lest it be interpreted by the public as a veil to hide judicial vices. * * *"

There is no evidence to prove, nor is it logical to assume, that the complainant would hesitate to criticize an attorney if such criticism would become public knowledge. The Bar's point that attorneys and judges would be reluctant to report their brethren seems more valid. A study of Bar discipline across the nation concluded that:

"* * * Lawyers rarely complain to disciplinary agencies about other lawyers. Judges, too, are reluctant to complain to disciplinary agencies about either lawyer performance or lawyer conduct. Instead, clients most frequently supply the regulatory inputs. * * *" Marks and Cathcart, *Discipline Within the Legal Profession: Is It Self-Regulation?* 1974 Ill Law Forum 193, 207.

Whether or not in this instance the public interest would be better served by disclosure or nondisclosure need not be decided, since the other requirements of ORS 192.500(2)(c) have not been met.

We conclude that the communications to the Bar relating to the professional conduct of attorney Jason Lee are not exempt from disclosure under ORS 192.500(2)(c) because there is no evidence that they were submitted in confidence and it is clear that "the public body" (Bar) could not oblige itself in good faith not to disclose the information.

[ 284 ]

We next turn to the more difficult question of whether the Public Records Law violates the constitutional doctrine of separation of powers.

The Bar's position is that if the Public Records Law applies to its disciplinary records and compels disclosure, then the law directly conflicts with Supreme Court Rule 32, in effect when this action was brought, and the current Rule 45. The Bar contends that under the separation of powers doctrine the exclusive power to regulate and control the practice of law inheres in the judiciary. The Supreme Court rule must be paramount and the legislature's attempt to change the rule is an unconstitutional invasion of the judicial function.

█ █ The plaintiff concedes that the application of the Public Records Law to the Bar would conflict with the court's rules. The plaintiff differs with the Bar in that he contends this does not necessarily make the statute unconstitutional. The separation of powers principle cannot in practice work absolutely; there is a necessary overlap between the governmental functions. The rule has evolved that legislation can affect the practice of law so long as it does not unduly burden or substantially interfere with the judiciary. *Ramstead v. Morgan, supra.*

The United States Supreme Court has ruled that:
"* * * [I]t rests exclusively with the court to determine who is qualified to become one of its officers, as an attorney and counselor, and for what cause he ought to be removed. * * *" *Ex parte Secombe,* 60 US (19 How) 9, 13, 15 L Ed 565 (1856).

That case dealt with a state statute which prescribed conditions for admission to the Bar, enumerated offenses for mandating removal and the mode of proceedings. The Supreme Court found upon examination that the statute had not narrowed in any material way the discretion of the court, but was primarily a codification of the court's general rules and therefore was

[ 285 ]

valid. *Ex parte Secombe, supra,* 60 US at 14. A dozen years later in *Randall v. Brigham,* 74 US (7 Wall) 523, 535, 19 L Ed 285 (1868), the Supreme Court stated that the Superior Court of Massachusetts was empowered by statute to admit the attorneys to practice in the courts of that state and to remove them "for any deceit, malpractice, or other gross misconduct." The court held, nevertheless, that: "Both the admission and the removal of attorneys are judicial acts." The court did not indicate that the statute imposed any limitation on or impaired the power of the judiciary over the bar. Both of these cases indicate that in practice there is an overlap between judicial and legislative authority.

The state courts have adhered to the above two principles, i.e., that it is part of the inherent power of the judiciary to determine qualifications for practicing law, but that statutes which assist the court in this function and do not encroach thereon are valid.

> "The power to admit applicants to practice law is judicial and not legislative, and is, of course, vested in the courts only. Originally the courts alone determined the qualifications of candidates for admission, but to avoid friction between the departments of government, the courts of this and other states have generously acquiesced in all reasonable provisions relating to qualifications enacted by the legislatures. *Hanson v. Grattan,* 84 Kan. 843, 115 P. 646, 34 L. R. A. (N. S.) 240; *State v. Cannon,* 196 Wis. 534, 221 N. W. 603." *In re Greathouse,* 189 Minn 51, 248 NW 735, 737 (1933).

See, also, *In re Opinion of the Justices,* 279 Mass 607, 180 NE 725, 727, 81 ALR 1059 (1932).

■ The overlap of judicial and legislative powers arises from the legislative police power to protect the public welfare by promoting the efficient and impartial administration of justice. *State v. Cannon,* 206 Wis 374, 240 NW 441, 444 (1932). See, generally, *In re Day,* 181 Ill 73, 54 NE 646, 650-653 (1899); *State v. Cannon,* 196 Wis 534, 221 NW 603, 604 (1928); *In re*

*Greathouse, supra,* 248 NW at 737-739; *Sharood v. Hatfield,* 296 Minn 416, 210 NW2d 275, 279-281 (1973).

A leading case in this area explained the concept of "inherent power" as follows:

"The Constitution does not, by any express grant, vest the power to define and regulate the practice of law in any of the three departments of government. In the absence of an express grant of this power to any one of the three departments, it must be exercised by the department to which it naturally belongs because 'It is a fundamental principle of constitutional law that each department of government, whether federal or state, "has, without any express grant, the inherent right to accomplish all *objects naturally within the orbit of that department,* not expressly limited by the fact of the existence of a similar power elsewhere or the express limitations in the constitution." * * *' " *In re Integration of Nebraska State Bar Ass'n,* 133 Neb 283, 275 NW 265, 266, 114 ALR 151 (1937).

■ In the same jurisdiction five years later the Nebraska court was faced with a conflict between a state statute and a Supreme Court rule on the qualifications for admission to the bar. The court recognized that within the state police power, the legislature has the right to set minimum requirements for admission to the bar. *State ex rel Ralston v. Turner,* 141 Neb 556, 4 NW2d 302, 306, 144 ALR 138 (1942). The power to admit a person to the practice of law is judicial. 4 NW2d at 310. The state statute in question was held unconstitutional as it went beyond setting minimum standards and encroached on the judicial function by attempting to dictate to the judiciary that the courts could not maintain their higher standards for admission. *State ex rel Ralston v. Turner, supra,* 4 NW2d at 311-312.

The original constitution for the State of Oregon, adopted by vote of the people on November 9, 1857, provided:

"The Judicial power of the State shall be vested in a Suprume (sic) Court, Circuits (sic) Courts, and County

Courts, which shall be Courts of Record having general jurisdiction, to be defined, limited, and regulated by law in accordance with this Constitution. * * *" Art. VII, § 1.

Article VII was amended by vote of the people on November 8, 1910. Article VII, § 2, now provides:

"The courts, jurisdiction, and judicial system of Oregon, except so far as expressly changed by this amendment, shall remain as at present constituted until otherwise provided by law. * * *"

■ The constitution, then, makes clear that the legislative branch may enact legislation affecting the judicial branch of the government. At the same time, the principle of separation of powers was recognized in Article III, § 1:

"The powers of the Government shall be divided into three seperate (sic) departments, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

This court has addressed the area of potential conflict between the judiciary and the legislature on several occasions. In *Ex parte Mason,* 29 Or 18, 24, 25, 43 P 651 (1896), the power to discipline attorneys was recognized as an inherent power of the courts. At the same time, a statutory regulation of such power was accepted as valid even to the extent of limiting the court's discretion as to what type of penalty could be imposed.

In *State v. Brownell,* 79 Or 123, 154 P 428 (1916), a statute set maximum penalties for a finding of contempt. The court was asked to consider its constitutional validity.

"It has been urged that, since constitutional courts have inherent power to punish for contempt, the legislature has no power to limit their action in this respect. We do not regard Section 671, L.O.L., as limiting their power

to punish for contempt, but merely as prescribing the procedure for exercising such power. * * *" 79 Or at 128.

The statute was upheld.

■■ *U'Ren v. Bagley,* 118 Or 77, 245 P 1074, 46 ALR 1173 (1926), was a mandamus action to compel a judge to grant a change of venue or to bring in another judge to hear a case pursuant to a statute providing that the filing of an affidavit of prejudice would disqualify a judge from hearing a case. The single question was the constitutionality of the statute. In language applicable to the situation at bar, the Supreme Court in *U'Ren* addressed the problem as follows:

> "Did the legislature go beyond its constitutional powers in enacting this law and thereby invade the province of a co-ordinate branch of the government? Under our constitutional system of government, the legislative, executive and judicial branches are required to function exclusively within their respective spheres. The success which our form of government has achieved in the past may be attributed largely to the fact that each co-ordinate branch has recognized the fundamental and salutary principle that there must be no encroachment upon the other. It remains, however, for the judiciary to say when there has been a transgression in this respect. This authority vested in the courts is one which should be exercised with extreme caution and only when there has been a plain and palpable abridgment of the powers of one department by another. To determine with precision the boundary between the respective co-ordinate branches of our government has ever been a difficult thing for the courts to do. The question at bar is in the twilight zone. Hence we must proceed with circumspection when called upon to say that there has been a legislative abridgment of judicial power. Courts are ever reluctant to annul by judicial sentence what has been enacted by the law-making power. In fact, when the life of a statute is at stake it is entitled to the benefit of every reasonable doubt * * *." 118 Or at 81.

The court determined that the statute was a valid exercise of legislative power and thus held the statute constitutional. The court said that public policy in this

case was that "the courts shall maintain the confidence of the people". *U'Ren v. Bagley, supra,* 118 Or at 83.

In *Nendel v. Meyers,* 162 Or 661, 94 P2d 680 (1939), an order granting a new trial was alleged to be void by the appellant because it was made more than ten days after the original judgment was filed in violation of a statute prescribing a ten day limitation. The court found the statute in question constitutional. "Certainly it is within the province of the legislature to prescribe the procedure for the hearing and determination of such motions." 162 Or at 663. The court continued:

> "No doubt this statute was enacted to expedite court business. It is common knowledge that the practice once prevailed among some judges to keep motions for new trial under advisement for an unreasonable length of time. The legislature, with good reason, has seen fit to stop such practice. In so doing, the legislature has not encroached upon the power of the judiciary. It has only, in the interest of the proper administration of justice, put a reasonable limitation upon the exercise of the power of courts in granting new trials." 162 Or at 664.

The respondent argued that the court granted a new trial *sua sponte.* If so, the trial court still violated the statute. The case was reversed and remanded for reinstatement of the judgment.

*State ex rel Bushman v. Vandenberg,* 203 Or 326, 276 P2d 432, 280 P2d 344 (1955), was a mandamus action involving a statute which provided for removal of judges at will. The case involved again the relationship between the legislative and judicial branches. The court saw the question as whether the legislature by the enactment of this particular statute had imposed unwarranted restraints on the courts in the exercise of their judicial functions. 203 Or at 333.

> "* * * There can be no doubt, however, that the legislature may, without unduly encroaching on judicial power, provide by law for the disqualification of judges

for bias or prejudice if the facts establishing such bias or prejudice are required to be stated." 203 Or at 336.

The statute in question allowed attorneys to remove duly qualified judges from the bench in a particular case "for good cause, bad cause, or no cause at all."

"* * * It may be true that the same thing was possible under the former statute, but that was only by an *abuse* of the statute, not by using it for the purposes which it was manifestly intended to accomplish. Therein lies the distinction between the two laws and the reason why *U'Ren v. Bagley* does not control the decision here." 203 Or at 337.

The court examined statistics which showed the extent of hardship on the judicial system by the use of the statute in question and found the statute an unconstitutional violation of the separation of powers. 203 Or at 340-341.

The leading case in Oregon concerning separation of powers is *Ramstead v. Morgan, supra. Ramstead* was an attorney's action for libel based on statements made by the defendant in a letter to the county grievance committee of the Bar. The plaintiff contended that an applicable statute, ORS 9.550(2), gave immunity from suit only if the statements were made in good faith and further contended that the libelous statements against him had not been made in good faith. After an exhaustive survey of the law this court found that the statements were absolutely privileged, that ORS 9.550(2) was not controlling, and that the plaintiff could not recover.

This court held that construing the statute so as to protect attorneys touches upon the traditional function of the judiciary in disciplining attorneys and therefore required deciding whether the statute so construed violated the separation of powers doctrine. *Ramstead v. Morgan, supra,* 219 Or at 399.

"Unquestionably, the legislature may act authoritatively with respect to some matters which affect the judicial process. * * * The limits of legislative authority are

reached, however, when legislative action unduly burdens or unduly interferes with the judicial department in the exercise of its judicial functions. * * *

"No area of judicial power is more clearly marked off and identified than the courts' power to regulate the conduct of the attorneys who serve under it. This power is derived not only from the necessity for the courts' control over an essential part of the judicial machinery with which it is entrusted by the constitution, but also because at the time state constitutions, including our own, were adopted the control over members of the bar was by long and jealously guarded tradition vested in the judiciary. * * *" 219 Or at 399.

The court found the statute in question was a serious incursion into the area of judicial functioning because:

"The courts can be fully effective in serving the public only if they can be seen by the people as a symbol of impartial judgment. To maintain this necessary symbolism, it is essential that there be no doubt, even in the mind of the most suspicious, of that impartiality and of the integrity of those entrusted with the legal machinery which insures it. We regard it as important, therefore, that there should be no impediment to free criticism of the bench and bar lest it be interpreted by the public as a veil to hide judicial vices. * * *" 219 Or at 400.

In two cases following the *Ramstead* decision this court declined to consider whether the judiciary had inherent power to determine a particular matter, finding that statutory construction would dispose of the case. *State Bar v. Security Escrows, Inc.,* 233 Or 80, 83-84, 377 P2d 334 (1962) (defining the practice of law); *Norman v. Van Elsberg,* 262 Or 286, 291-292, 497 P2d 204 (1972) (setting juvenile department personnel salaries).

■ This court squarely faced the problem again in *State ex rel Oregon State Bar v. Lenske,* 243 Or 477, 405 P2d 510, 407 P2d 250 (1966). Referring to the court's power to punish for contempt, this court held the legislature cannot unreasonably abridge or destroy an inherent judicial power because the legislature can-

[ 292 ]

not take away a power which it does not give. 243 Or at 492-493. The legislature may make reasonable regulations covering the exercise of the power so long as the regulations do not substantially impair or destroy the power. This court quoted a New Mexico opinion at length. In pertinent part it said:

"'* * * The separation of powers between the executive, legislature and judiciary was never intended to be complete. * * * This court made this clear in the case of * * * when it stated, "Again the proposition that the three departments of the state government are independent of each other is only relatively and not absolutely true." Even the strictest inherent power advocates have conceded at least some authority of the legislature to set up restrictions upon the exercise of the contempt power. * * *'" *State v. Greenwood,* 63 NM 156, 315 P2d 223 (1957), quoted at 243 Or at 495.

The Bar's argument that the statute must fall because it conflicts with the Supreme Court rules is an incorrect interpretation of the law. There are cases which hold that in the area of admission to the bar and suspension or disbarment, the judiciary has exclusive inherent power which in no way can be limited by the legislature. Courts may honor implementing legislation, but are not bound to do so. *Application of Feingold,* 296 A2d 492, 496 (Me 1972); *Feldman v. State Bd. of Law Examiners,* 438 F2d 699, 702 (8th Cir 1971); *In re Nevius,* 174 Ohio St 560, 191 NE2d 166, 169 (1963). This is not necessarily a contradiction of the test utilized by the Oregon courts in earlier cases. Any statute which affects the court's rules on admission to the bar, suspension, or disbarment might well constitute a substantial impairment of the court's power.

The statute whose validity is before the court in this case does not affect the rules for admission, suspension or disbarment. It affects the disciplinary procedure only by opening up the files of the Bar to the public on request. The question before the court today is whether that is an unreasonable encroachment on the judicial function of disciplining attorneys.

It should be noted that the Oregon State Bar itself was created by statute. ORS 9.010 to ORS 9.130. Membership in the Bar is defined by statute. ORS 9.160 to ORS 9.270. Professional ethics for members of the Bar are codified. ORS 9.460 to ORS 9.580. Applying the Public Records Law to the Bar would not be the first legislative regulation of the Bar.

This court has recognized that there is a public "right to know." *MacEwan v. Holm et al,* 226 Or 27, 38-39, 359 P2d 413, 85 ALR2d 1086 (1961). This court has also recognized that the disciplining of attorneys by the court is the performance of a public trust and therefore is the public business and should be disposed of in a public manner. *In re Walter D. Alley,* 256 Or 51, 54-55, 470 P2d 943 (1970).

In *Ramstead v. Morgan, supra,* this court cited *Spriggs v. Cheyenne Newspapers, Inc.,* 63 Wyo 416, 182 P2d 801 (1947), which was an action for libel against a newspaper which published a report of disciplinary proceedings against an attorney, the accusations made against him, and the ultimate disposition. On appeal, the Wyoming Supreme Court found the statements made were true and were made for justifiable ends so that no libel action could lie.

> "* * * The general public is entitled to know when an attorney becomes involved in a disbarment proceeding, such a proceeding being one definitely for the welfare of the citizens of the state * * *. It is of the highest importance that the public should know when attorneys, as officers of the court, are charged with disloyalty thereto. It is only through the possession of such knowledge that the people can intelligently deal with the members of the legal profession and intrust business to them." 182 P2d at 814-815.

Similarly, the Massachusetts Supreme Court has stated:

> "* * * It is highly important, also, that the public be protected from incompetent and vicious practioners, [sic] whose opportunity for doing mischief is wide." *In re Opinion of the Justices,* supra, 180 NE at 727.

[ 294 ]

The Bar is concerned about the damage to reputations by the publishing of frivolous or groundless complaints. By the Bar's own rules, each complaint is forwarded to the accused attorney for his response.

The Bar itself has noted that when information is liberally released to the press, the press becomes less interested in securing the release. Oregon State Bar Bulletin, June, 1975, page 9.

Although this court has held that statements made in the course of disciplinary proceedings are absolutely privileged, an attorney still has protection from a bad faith attack by resort to an action for malicious prosecution. *Ramstead v. Morgan, supra,* 219 Or at 398. It could be argued that the *Ramstead* situation is before the court today in a different posture. In *Ramstead* the attorneys were given special treatment by effect of the statute; this court struck down the statute because it saw the importance of free criticism of the bench and bar. To strike down the Public Records Law would give special treatment to attorneys and perhaps encourage public belief that a veil of secrecy is hiding professional misconduct. Opening up the files of the Bar to the public may restore confidence in the integrity of the individual attorney and assure those concerned that the profession is truly committed to maintaining the highest legal ethics.

We conclude that the Public Records Law does not unreasonably encroach upon the judicial function of disciplining lawyers. We, therefore, hold that the Public Records Law is constitutional.

**TONGUE, J.,** concurring in part and dissenting in part.

I join in the views expressed by Howell, J., in his concurring opinion. We may believe that this statute, as enacted by the 1975 Oregon Legislature, is unfair and unjust as applied to complaints against lawyers, but we cannot properly deny the power of the legisla-

ture to enact such a statute for the reasons stated by the majority.

I dissent, however, from the opinion by the majority insofar as it appears to apply the provisions of ORS 192.410 et seq. retroactively, so as to permit public access to complaints made against lawyers prior to the effective date of that statute on July 1, 1973.

In *Joseph v. Lowery,* 261 Or 545, 547, 495 P2d 273 (1972), we approved the rule as stated in our previous decision in *Kempf v. Carpenters & Joiners Union,* 229 Or 337, 343, 367 P2d 436 (1961), as follows:

" '* * * Unless retroactive construction is mandatory by the terms of the act it should not be applied if such construction will impair existing rights, create new obligations or impose additional duties with respect to past transactions * * *.' "

We also said (at 548-49):

"* * * [T]his court has refused to give retroactive application to the provisions of statutes which affect the legal rights and obligations arising out of past actions. This is without respect to whether the change might be 'procedural or remedial' or 'substantive' in a strictly technical sense. * * *"

It is true that there are differences between the statutes involved in this case and in *Joseph.* In my view, however, the reasons for the rule as stated in *Joseph* are also applicable in this case.

**HOWELL, J.,** specially concurring.

I cannot disagree with the reasoning expressed in the majority opinion. However, now that we hold that complaints made against a member of the bar, no matter how false or frivolous, are subject to disclosure, it may be that this court should reconsider the policy reasons which granted absolute immunity to a complainant in *Ramstead v. Morgan,* 219 Or 383, 347 P2d 594, 77 ALR2d 481 (1959).