Argued and submitted September 6, peremptory writ
to issue commanding defendants to appoint counsel;
that part of the alternative writ relating to
transcripts dismissed December 18, 1979

STATE ex rel ACOCELLA, et al,
*Plaintiffs-Relators,*

*v.*

ALLEN, et al,
*Defendants.*

STATE ex rel CASE, et al,
*Plaintiffs-Relators,*

*v.*

ALLEN,
*Defendant.*

(SC 26296, SC 26277)
(Cases Consolidated)

604 P2d 391

[175]

[176]

Gary D. Babcock, Public Defender, Salem, argued the cause and filed the brief for plaintiffs-relators.

Margie Hendriksen, County Counsel, Eugene, argued the cause and filed the brief for defendant Edwin E. Allen.

[176-a]

John B. Leahy, County Counsel, Portland, filed the brief amicus curiae on behalf of Multnomah County.

DENECKE, C. J.

## DENECKE, C. J.

Relators are nine criminal defendants who were convicted in Lane County circuit court of committing various unrelated felonies. Each was represented in the circuit court by appointed counsel, and in each case the State Public Defender filed a timely notice of appeal, a motion for appointment of appellate counsel, and for a transcript at county expense, supported by an affidavit attesting to the indigency of the appellant. The motions requesting appointed counsel and a transcript at county expense were addressed to the circuit court, as required by ORS 138.500(1)-(2). In each case the Public Defender also notified the trial judge that his office would not be able to process the appeal, due to inadequate staff.[1] The circuit judges of Lane County refused, however, to permit the Public Defender to decline appointment. On May 9, 1979, Judge Allen sent a letter to Public Defender Gary Babcock regarding the appeal of relator Susan Marie Eichler. The letter stated, in relevant part:

> "Hereafter, in those cases in which you advise that it is not possible for you to act as counsel on appeal, in an attempt to assist you we will contact trial counsel and if they are willing to handle the matter on appeal, we will appoint them. If they decline to so act as counsel on appeal, we will appoint you. Consequently, enclosed are copies of Orders appointing you as appellant [*sic*] counsel for Ms. Eichler in both of the aforementioned cases."

Judge Allen and his colleagues entered orders appointing the Public Defender to represent all nine relators on appeal, despite his efforts to decline appointment. In seven instances Judge Allen also denied subsequent motions by the Public Defender to withdraw as counsel.

---

[1] In declining to serve the Public Defender referred the court to his letter of March 23, 1979, to the Hon. Edwin E. Allen, Presiding Judge of the Lane County Circuit Court. That letter announced a new policy, adopted by the Public Defender Committee, of handling only selected criminal appeals in the more populous counties of the state. The letter expressed regret that the Public Defender could no longer process all indigent felony appeals, but cited an unacceptable caseload of 11.8 trial briefs per attorney per month.

Relators filed petitions in this court for an alternative writ of mandamus, praying that the Supreme Court order Judge Allen and the other Lane County circuit judges to appoint counsel other than the Public Defender. We allowed the petitions and issued alternative writs of mandamus to Judge Allen, to which he responded by filing timely demurrers.

## I.

This is not a right to counsel case. ORS 138.500(1) clearly provides that the circuit court shall appoint counsel, upon request, for an indigent criminal defendant who wishes to appeal his or her conviction. No party to this proceeding contends otherwise. The petition presents the question of whether a circuit judge has the power to order the Public Defender to serve, where the Public Defender Committee has determined that he is unable to serve. ORS 138.500(1) states:

> "If a defendant in a criminal action or a petitioner in a proceeding pursuant to ORS 138.510 to 138.680 wishes to appeal from an appealable adverse final order or judgment of a circuit court or district court and if such person is without funds to employ suitable counsel possessing skills and experience commensurate with the nature and complexity of the case for the appeal, the person may request the circuit court or district court from which the appeal is or would be taken to appoint such counsel to represent the person on such appeal. The request shall be in writing and shall be made within the time during which an appeal may be taken or, if the notice of appeal has been filed, at any time thereafter. The request shall include a brief statement of the assets, liabilities and income in the previous year of such person. Upon receiving such a request, the circuit court or district court, if it finds that petitioner or defendant is without funds to employ suitable counsel for an appeal, shall appoint such counsel to represent petitioner or defendant on the appeal. The circuit court or district court, in its discretion, may appoint counsel who represented petitioner or defendant in the circuit court or district court in the case, or *if the Public*

[178]

*Defender is able to serve,* it may appoint the Public Defender as counsel on appeal." (Emphasis added.)[1a]

Relators contend that the legislature invested the Public Defender Committee with the authority to determine whether the Public Defender is able to serve. The Committee, created by the legislature in 1963,[2] consists of five individuals appointed by the Supreme Court. ORS 151.280 prescribes the duties of the Committee, which include the appointment of the Public Defender, the determination of "policies and procedures for the performance of the defender's functions," and other supervisory functions. Most relevant to this case is ORS 151.280(7), which states:

"Where the defender is unable to perform fully his authorized functions [the Committee shall], determine the nature and extent of the services he shall render."

This language, and the amendment to ORS 138.500(1) which authorized the trial court to appoint the Public Defender "if the Public Defender is able to serve," were enacted as different sections of the same bill.[3] The clear inference, both from this fact and from the plain language of ORS 151.280(7), is that the legislature intended that the Public Defender Committee make the determination.

Defendant[4] contends, however, that ORS 151.280(7) is unconstitutional, in that it infringes

___

[1a] ORS 138.500(1), as amended by 1979 Or Laws ch 867, § 3. The 1979 amendments have no relevance to any of the issues in these mandamus proceedings.

[2] 1963 Or Laws, ch 600, §§ 2-3, codified at ORS 151.270-280.

[3] HB 1665, 1963 Or Laws, ch 600, §§ 3 and 8.

[4] The designation of parties in this mandamus proceeding may engender some confusion. Here Judge Allen is the defendant. Relators, who were criminal defendants in the Lane County Circuit Court, are "plaintiffs/relators" in this proceeding.

One of the petitions named the Honorable Samuel M. Bowe, circuit judge for Josephine County, as an additional defendant but we subsequently dismissed Judge Bowe from the proceeding upon the motion of the relator over whose trial Judge Bowe had presided.

upon the inherent power of the judiciary to compel attorneys as officers of the court to represent indigent defendants. The defendant views ORS 151.280(7) as a legislative incursion into the judicial domain, in derogation of Art III, § 1 of the Oregon Constitution.[5] We have no doubt that Oregon courts have the inherent power to call upon members of the bar to represent an indigent defendant who has no other means of obtaining counsel.[6] That is what Judge Allen attempted to do here. The question is whether ORS 151.280(7) unconstitutionally limits the court's power, by permitting the Committee to remove certain attorneys from the pool of eligible appointees.

The power reserved to the judiciary by Art III, § 1, is neither absolute nor exclusive. As we stated in a recent decision:

"The separation of powers principle cannot in practice work absolutely; there is a necessary overlap between the governmental functions. The rule has evolved that legislation can affect the practice of law so long as it does not unduly burden or substantially

---

[5]

' 'Section 1. Separation of powers. The powers of the Government shall be divided into three seperate [*sic*] departments, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

[6] We so held in *State v. Delaney,* 221 Or 620, 641, 332 P2d 71, 80 (1960).

Other courts have based the attorney's obligation to represent indigent defendants on either the attorney's duty as an officer of the court or on his ethical obligations under EC 2-25 and EC 2-29 of the ABA Code of Professional Responsibility, adopted by this court on December 30, 1970. *See, e.g., United States v. Dillon,* 346 F2d 633, 635 (9th Cir 1965), *cert den* 382 US 978, 86 S Ct 550, 15 L Ed2d 469 (1966); *Dolan v. United States,* 351 F2d 671, 672 (5th Cir 1965); *Warner v. Commonwealth,* 400 SW2d 209, 211 (Ky 1966), *cert den Warner v. Kentucky,* 385 US 858, 87 S Ct 108, 17 L Ed2d 85 (1966); *State v. Clifton,* 247 La 495, 172 So2d 657, 667-68 (1965); *Brown v Bd. of County Comm'rs,* 85 Nev 149, 151, 451 P2d 708, 709 (1969); *Smith v. State,* 394 A2d 834, 837 (NH 1978); *State v. Rush,* 46 NJ 399, 217 A2d 441, 447 (1966); *In re Smiley,* 36 NY2d 433, 330 NE2d 53, 55 (1975); and cases cited in Annotation, 21ALR3d 819, 822-829. Cf. Comment, The Uncompensated Appointed Counsel System: A Constitutional and Social Transgression, 60 Ky L J 710, 713 (1972).

interfere with the judiciary." *Sadler v. Oregon State Bar,* 275 Or 279, 285, 550 P2d 1218, 1222 (1976).

On a number of occasions this court has considered claims of alleged encroachment by the legislature upon powers reserved to the judiciary. The challenging problem, in each of these cases, has been to articulate a standard for deciding what constitutes undue interference.

In *Sadler, supra* (275 Or 279), a citizen brought suit under the Public Records Law, ORS 192.410 *et seq.,* to compel the Bar to furnish copies of certain disciplinary records. The Bar contended that a Supreme Court rule then in effect exempted the records from disclosure, and that the statute must give way to the inherent power of the court to regulate the practice of law. We recognized that applying the Public Records Law to Bar disciplinary proceedings would constitute legislative regulation of the Bar, 275 Or at 294. But we upheld the statute, for the reason that the Public Records Law did not "unreasonably encroach upon the judicial function of disciplining lawyers." 275 Or at 295. *See also Ramstead v. Morgan, 219 Or 383, 347 P2d 594 (1959); State ex rel Oregon State Bar v. Lenske,* 243 Or 477, 407 P2d 250 (1965), *cert den* 384 US 943, 86 S Ct 1460, 16 L Ed2d 541 (1966), *rehr den* 384 US 1028, 86 S Ct 1920, 16 L Ed2d 1047 (1966).

These cases establish that the legislature may regulate the legal profession and the practice of law, provided that a statute does not unduly burden or unduly interfere with the judiciary in the exercise of its judicial functions. Viewing ORS 151.280(7) against that standard, we do not see how the occasional unavailability of the State Public Defender to represent indigent defendants on appeal would impair the court's ability to carry out any judicial function. No one contends that the Public Defender is the only lawyer in Lane County qualified to represent the relators on appeal. The reason the Lane County circuit judges insist upon his appointment is to reduce the fiscal

burden on Lane County taxpayers.[7] Although ORS 151.280(7) may occasionally frustrate the realization of that goal, it does not unreasonably impair the court's power to regulate the practice of law.

The defendant makes the additional argument that a writ of mandamus does not lie to compel defendant to appoint counsel other than the Public Defender. He contends that the selection of an attorney for appointment is entrusted to the sound discretion of the trial judge, and that ORS 34.110 prohibits the use of a writ of mandamus to control judicial discretion. The flaw in this argument is that the decision to appoint the Public Defender is not entrusted entirely to the discretion of the trial court. When the Committee has determined that the Defender is unable to serve, the trial court has a nondiscretionary duty to honor that finding, and a writ of mandamus does lie to direct the performance of that duty.

## II

Judge Allen also ruled that the court would require more than a simple showing of indigence before providing criminal defendants with a transcript at county expense:

> " * * * In this case and in the future, I am ordering no transcripts at county expense unless and until appellate counsel, whether yourself or any other appeallate [*sic*] counsel, can inform me, by Motion and Affidavit, that there exists reasonable grounds for me to order a transcript or portions of a transcript. I am advising you in advance that an Affidavit which simply indicates that there is a necessity for a transcript to be provided in order for you to examine it to determine if, in fact, there are any grounds for appeal will not be sufficient."

---

[7] ORS 138.500(3) provides that the cost, including reasonable attorney fees, of a direct appeal from a criminal judgment against an indigent must be paid by the county in which the judgment was rendered. If, however, the appointed counsel on appeal is the Public Defender, the county need pay only half the fee for his services. ORS 138.500(5). At oral argument, counsel for Judge Allen stated that the question before the court is very important to the counties, because they must find the additional tax dollars to pay private counsel if the Public Defender is unable to serve.

In the 14 cases involving the relators, the Public Defender refused or was unable to say whether "reasonable grounds" existed to order a transcript. Accordingly, the Lane County circuit judges declined to provide transcripts for the relators.[8] In seven instances Judge Allen denied motions for reconsideration of his decision denying a transcript.

Relators challenge the constitutionality of these rulings. Relators contend that where new counsel has been appointed to represent an indigent defendant on appeal the defendant has a federal constitutional right to a transcript at government expense, without any showing of need or merit.

The petitions for mandamus pray for orders requiring the judges to order transcripts to be paid for by the government.

Before considering the constitutional claim we must first determine whether the Oregon statutory scheme mandates the provision of a government-paid transcript upon a simple showing of indigency. ORS 138.500(2) answers that question. It provides that upon request, the court shall furnish to an indigent defendant "such portion of the transcript as may be material to the decision on appeal, if the circuit court or the district court finds that such transcript or portion thereof *is necessary* and that such person is unable to pay for it." (Emphasis added.)

The legislature clearly did not intend that an indigent defendant should be able to obtain the entire transcript at government expense, simply by asking for it. Rather, the statute directs the trial judge to order such portions of the transcript as are "necessary" and "material to the decision on appeal." We construe these terms to mean necessary for the presentation of the defendant's assignments of error. A defendant who

---

[8] In one case, *State v. Donald Bruce Goodyear,* Judge Beckett granted a "designated transcript," "such transcript to be provided only upon indication as to the designated part required."

appeals on the ground that the court admitted an exhibit into evidence without an adequate foundation may not need the entire transcript to raise that issue. The legislature directed the trial court to screen the request, and to order furnished only those sections of the transcript that are relevant to the defendant's allegations of error.

The affidavits demanded by Judge Allen are no substitute for the independent judicial inquiry mandated by ORS 138.500(2). They may assist that inquiry, however, if the affidavits demonstrate the need for the requested portions of the transcript. In order to make a determination of necessity and materiality under ORS 138.500(2), the trial court must be informed of the defendant's contentions on appeal. ORS 19.029(1)(e) provides that the notice of appeal must contain "A plain and concise statement of the points on which the appellant intends to rely." The statute waives the statement of points, however, where the appellant has designated all the testimony and all the instructions given and requested for inclusion in the record. Where the appellant has not filed a statement of points the trial court attempting to process a request for transcript will not know what contentions the defendant intends to make on appeal. In such a case we do not understand how the trial court can obtain the information it needs to screen transcript requests, without some assistance from appellate counsel. A trial court could reasonably solicit the necessary information in the form of an affidavit.

The problem is that Judge Allen did not ask specifically for a statement of how the requested transcript would support the relators' contentions on appeal. In his letter to the Public Defender he demanded an affidavit from appellate counsel "that there exists reasonable grounds for me to order a transcript or portions of a transcript." If by that language he meant to solicit the opinion of defendant's appellate counsel as to the *merit* of defendant's contentions, that infor-

mation is irrelevant to the court's responsibilities under ORS 138.500(2). One function a transcript serves for an appellant is to document the errors allegedly committed during trial, usually by the same judge who screens the request for a transcript. The legislature did not intend that the judge whose conduct is challenged should have the effective power to deny review of those assignments of error which the judge regards as frivolous. ORS 138.500(2) secures to the indigent defendant his statutory right to independent appellate review of all assignments of error.[9]

The relators refused to file the affidavits demanded by the respondent. Thus we have no way of knowing what information Judge Allen was looking for in the affidavits. Since the information contained in such an affidavit could assist the trial judge in determining whether a transcript is necessary, we hold that Judge Allen chose a reasonable means to carry out his statutory responsibilities, provided, of course, that the subject matter of the affidavit is limited to the necessity for the transcript, as that term is construed above.

The statutory scheme outlined above, under which the defendant must designate his contentions on appeal without access to a transcript, can pose a severe problem for the defendant whose appellate counsel enters the case after trial. The United States Supreme Court has recognized the dilemma confronting the attorney who was not present at his client's trial. In *Hardy v. United States,* 375 US 277, 84 S Ct 424, 11 L Ed2d 331 (1964), the majority quoted extensively from a law review article contending that nothing short of a transcript would enable counsel to conduct a comprehensive search for error:

"* * * Frequently, issues simply cannot even be seen—let alone assessed—without reading an accurate transcript. Particularly is this true of questions

---

[9] ORS 138.020 gives the defendant an appeal as a matter of right from a judgment in a criminal action. ORS 138.040 provides, in pertinent part: "Upon an appeal, or cross appeal, any decision of the court in an intermediate order or proceeding may be reviewed."

relating to evidence or to the judge's charge; and it may also apply to many other types of questions. Moreover, the actual record (if appellate counsel could have it to inspect) might disclose issues substantial enough to constitute probable or possible 'plain error,' even though trial counsel was not aware of their existence; and the indigent should have the same opportunity as the wealthy to urge that plain error should be noticed on appeal. In short, a conscientious counsel freshly entering the case at the appellate stage normally is likely to conclude that a full or partial transcript of the trial proceedings will be indispensable if the requisite 'dependable record' is to be obtained as a basis for evaluating the case." 375 US at 281, *quoting* Boskey, *The Right to Counsel In Appellate Proceedings* 45 Minn L Rev 783, 793 (1961).

In *Hardy* the Supreme Court held, on statutory grounds, that new counsel on appeal is entitled to a full transcript.[10] But the Oregon statutory scheme differs from the federal rule, in that the defendant must present the contentions he intends to make on appeal in order to get a transcript. Unfortunately, the legislature did not say how new counsel on appeal is to apprise himself of what errors, if any, were committed below. The options that have been suggested include consulting with trial counsel, interviewing the defendant, examining the formal documents in the record, or even asking the court reporter to read back a limited segment of his shorthand notes.[11]

None of these methods provides a totally adequate substitute for a verbatim transcript. The attorney who handled the trial should, however, be able to brief appellate counsel concerning possible grounds for appeal. By virtue of his adversarial role as the defendant's champion, his participation at every stage of the

---

[10] Mr. Justice Goldberg wrote a concurring opinion, signed by three other justices, in which he urged that the court should use its supervisory power to require that full transcripts be provided in all federal cases to any indigent who seeks to prosecute an appeal. 375 US at 282.

[11] 375 US at 280-281, n 3, *quoting* Boskey, *supra,* 45 Minn L Rev at 792-93.

proceeding prior to the conviction and his knowledge of the law, trial counsel is uniquely qualified to assist in the preparation of an ORS 19.029 "statement of points," or of an affidavit in support of a request for transcript. With his assistance, appellate counsel should be able to provide the information that a trial judge must have, in order to determine what portions of the transcript are "necessary" and "material" to the contentions on appeal.

At oral argument, however, we were told that trial counsel cannot always be located within the time allowed for filing an appeal, and even that some defense lawyers do not make themselves available for consultation. In most cases appellate counsel has no practical alternative to relying upon the trial lawyer for the information needed to support a transcript motion. Without the assistance of trial counsel, defendant may not be able to get a transcript. For that reason we hold that part of the duty of a trial lawyer is the obligation to assist in the preparation of the designation of the record required by ORS 19.029(1)(d), the "statement of points," where required by ORS 19.029(1)(e), and, where requested by the court, a statement explaining the necessity for a transcript or portions thereof. The need for such a rule is obvious. The authority to promulgate it derives from the attorney's professional obligations to his client and to the court. "An attorney is an officer of the court and it would be a novelty to hold that a court could not appoint one of its officers to assist it in doing justice when it developed that the court could not do justice without the aid of such an officer." *State v. Delaney,* 221 Or 620, 640, 332 P2d 71 (1960).

The obligation of the trial defense lawyer we are announcing today is not without precedent. In *People v. Wilson,* 72 Cal App3d Supp 59, 140 Cal Rptr 274 (App Dept Super Ct 1977), a criminal defendant appealing her conviction omitted two assignments of error from her statement of contentions on appeal. The

California Rules of Court required that the statement of contentions must specify all of the grounds on which the appellant intends to rely. The court excused the lapse, however, because defendant's appointed counsel had resigned after sentencing, and appellate counsel had not yet been appointed. The court reasoned that defendants need the assistance of counsel in preparing the statement of contentions, and that "no one is as uniquely qualified to assist in the preparation of the statement of appeal as the trial attorney." 140 Cal Rptr at 276. For this reason the court promulgated the rule that "trial counsel, be they court appointed or privately retained, and regardless of whether they intend to participate in the appeal, have an obligation to assist in the preparation and settlement of the statement on appeal." *Id.*

In *Woods v. Rhay,* 54 Wash2d 36, 338 P2d 332 (1959), the Washington Supreme Court promulgated rules under which an indigent defendant must set forth the assignments of error in a motion for a free transcript. The court added that "Where court-appointed counsel has represented the defendant at the trial, his services should be made available to the defendant for the purpose of presenting the motion." 338 P2d at 337, n 2.

Other decisions hold that the responsibilities of trial counsel for an indigent defendant do not end upon conviction. *See, e.g., Gairson v. Cupp,* 415 F2d 352, 353 (9th Cir 1969) (trial counsel must file notice of appeal or tell client how to proceed on his own behalf); *Erb v. State,* 332 A2d 137, 139 (Del 1974) (trial counsel must docket the appeal, brief appellate counsel, participate in designation of transcript).

Relators contend, however, that even the guaranteed participation of trial counsel in the preparation of transcript requests cannot cure the constitutional defects of the Oregon statutory scheme. According to relators, the Fourteenth Amendment to the United States Constitution prohibits Oregon from requiring a

defendant to make any showing of need (other than the fact of his indigency) as a condition to the provision of a transcript.

The indigent defendant's federal constitutional right to a transcript derives from the Equal Protection and Due Process clauses of the Fourteenth Amendment. *Griffin v. Illinois,* 351 US 12, 18, 76 S Ct 585, 100 L Ed 891 (1956). *See, generally,* Comment: The Indigent's Right to a Transcript of Record, 20 Kan L Rev 745 (1972); Comment: Restricting the Indigent's Right to a Transcript, 1976 Wash U L Q 318. The same guarantees may be found in Art I of the Oregon Constitution. However, Art I contains no language to suggest that the scope of the right is any greater under the state constitution than under the Fourteenth Amendment. Oregon law in this area has been controlled by the decisions of the United States Supreme Court. *See Bevel v. Gladden,* 232 Or 578, 584, 376 P2d 117, 120 (1962), *State v. Delaney, supra* (221 Or 620); *Barber v. Gladden,* 210 Or 46, 298 P2d 986 (1956), *cert den* 359 US 948, 79 S Ct 732, 3 L Ed2d 681 (1959).

In *Draper v. Washington,* 372 US 487, 83 S Ct 774, 9 L Ed2d 899 (1963), the Supreme Court upheld the constitutionality of a Washington rule which required an indigent defendant, in his motion for a free transcript, to set forth "The errors which he claims were committed." 372 US at 489, 498. The Court held that the rule did not impose an unreasonable burden on defendants:

> "* * * [P]art or all of the stenographic transcript in certain cases will not be germane to consideration of the appeal, and a State will not be required to expend its funds unnecessarily in such circumstances. If, for instance, the points urged relate only to the validity of the statute or the sufficiency of the indictment upon which conviction was predicated, the transcript is irrelevant and need not be provided. If the assignments of error go only to rulings on evidence or to its sufficiency, the transcript provided might well be limited to the portions relevant to such issues." 372 US at 495-96.

The court quoted this language with approval in *Mayer v. City of Chicago,* 404 US 189, 194, 92 S Ct 410, 30 L Ed2d 372 (1971). These cases establish that Lane County need not waste public funds by reproducing portions of a transcript which have no relevance to the contentions on appeal. The right to withhold an irrelevant segment necessarily implies the right to screen transcript requests for materiality. The defendant's burden under ORS 138.500(2) is no more onerous than the requirement, upheld in *Draper, supra,* to specify the assignments of error. Accordingly, we cannot say that ORS 138.500(2) demands too much of the relators.

Although the state has the right to demand a showing of need, *Mayer v. City of Chicago* imposed a constitutional constraint on the rigor with which the court screens transcript requests. ORS 138.500(2) does not say who carries the burden to establish or negate the necessity and materiality of a requested segment. In *Mayer* the Supreme Court addressed this problem, holding that once the appellant makes out a "colorable need" for a complete transcript, the burden shifts to the state to show that only a portion, or some alternative means of presenting the record to the appellate court, will suffice for an effective appeal. 404 US at 195. The same rule would apply, of course, where the appellant requests less than a complete transcript.

The Supreme Court did not say what it meant by a "colorable need." In scrutinizing transcript requests, however, the courts must bear in mind the difficulty of trying to recall all of the potential grounds for appeal from a judgment rendered weeks or months ago, to specify where in the proceedings the errors occurred, and to present that information to the court, all without the benefit of a transcript. As we noted above, the problem is even more severe when new counsel is appointed to handle the appeal. Under these circumstances the court cannot expect counsel to quote the exact language of an allegedly prejudicial remark, or

to locate an error in the record with pinpoint precision. Only if the court processes transcript applications with a tolerant appreciation for the task confronting appellate counsel can the relators be assured the same opportunity for appellate review as the defendant with resources to buy a transcript.

A peremptory writ shall issue commanding the defendant to appoint counsel on appeal other than the State Public Defender. That part of the alternative writ requiring the defendant to provide transcripts to the relators is dismissed.