614 P.2d 710 (1980)
STATE of Wyoming ex rel. Peter J. FEENEY, Commissioner of the County Court of Natrona County, Wyoming, Petitioner,
v.
DISTRICT COURT OF the SEVENTH JUDICIAL DISTRICT and Judge Dan Spangler, Judge of the District Court, Seventh Judicial District, Natrona County, Wyoming; the Attorney General for the State of Wyoming; the County and Prosecuting Attorney for Natrona County, Wyoming; Harriscope Broadcasting Corporation, d/b/a KTWO Radio and Television; Stephen E. Little; and Mike Howell, Respondents.
The STATE of Wyoming, upon the relation of Mike HOWELL, Petitioner,
v.
The SEVENTH JUDICIAL DISTRICT OF NATRONA COUNTY, Wyoming, Dan Spangler, Judge thereof, Respondent.
Peter J. FEENEY, Commissioner of the County Court of Natrona County, Wyoming, Appellant (Respondent),
v.
STATE of Wyoming ex rel. HARRISCOPE BROADCASTING CORPORATION, d/b/a KTWO Radio and Television, Appellee (Petitioner).
The Attorney General for the State of Wyoming; the County and Prosecuting Attorney for Natrona County, Wyoming; Stephen E. Little; and Mike Howell, Appellees (Other Respondents).
Nos. 5232, 5241 and 5245.
Supreme Court of Wyoming.
April 23, 1980.

*711 OPINION DENYING REHEARING
ROSE, Justice, with whom McCLINTOCK, Justice, and THOMAS, Justice, concur.
Harriscope Broadcasting Corporation, d/b/a KTWO Radio and Television, having petitioned for rehearing in the above-entitled matters, said petition is denied.
The dissents to the majority opinion, as well as Harriscope's brief in support of its petition for rehearing, all sound of underlying misconception of the majority holding in both Williams v. Stafford, Wyo., 589 P.2d 322 (1979), and the instant matter.
In Williams, we held that prohibition was not the appropriate remedy and  if there was a remedy  it had to be mandamus.

Why not prohibition?
Prohibition was not available to Williams and Harriscope in Williams because when they petitioned for a writ of prohibition, they were in an after-the-fact situation. The cow was already out of the barn. Courts cannot prohibit something that is a fait accompli. How could this court have issued a writ of prohibition directing the justice of the peace in Williams not to do something she had already done  namely, she had long since held the closed bail-bond hearing that the petitioners for the writ sought to prohibit.
We could have denied the petition on that ground alone and this would have disposed of Williams, but this course of action would have been of no service to the litigants, the news media and the people of the State of Wyoming generally. We, therefore, looked for a way to keep Williams v. Stafford, supra, in court, even though the petitioners had sought the wrong remedy, in order that their complaints could be adjudicated and standards could be established which would govern pretrial closure proceedings in the future when the question of abuse of discretion was properly before the court.

Why not mandamus?
We said in Williams that, in order to accomplish these purposes, we would treat the petition as though it were for a writ of mandamus. In doing this, we had hoped to make it clear that, while the office of mandamus permits the writ to reach out to direct a justice of the peace to perform a ministerial act  that is, mandamus will serve the purpose of directing the justice to do those things which the law says she must do  it will not, however, serve to control her judicial discretion.[1] We have a statute that prevents mandamus from being utilized in this manner. Section 1-30-102, W.S. 1977, provides:
"The writ can only be issued by the supreme court or the district court. It may require an inferior tribunal to exercise its judgment or to proceed to discharge any of its functions but it cannot control judicial discretion." (Emphasis supplied.)
In order to ascertain whether the justice of the peace was performing a ministerial function when she ordered the record of the closed bail-bond proceedings withheld from the public (which function mandamus would reach) or whether she was performing a discretionary function (which mandamus would not reach), we looked to see what evidence there was upon which the justice had based her order. This was proper because had it turned out that there was no *712 evidence of record to support the closure, then her duty to make public the bail-bond proceedings would have been clear  standards or no standards. This is so because the norm is an open hearing. Gannett Co., Inc. v. DePasquale, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979). Had there been no evidence to support closure, the order to release the record of the bail-bond proceedings would have been found its authority in the fact that there was insufficient evidence to support the order of closure, rather than abuse of discretion in entering the order. Additionally, we considered the constitutional issues in order to determine whether or not the applicable constitutional law prohibited or restricted closure under the facts and law of the case.
In the course of this entire inquiry, we saw fit to adopt standards which would, in the future, govern minor court judges faced with closure motions grounded upon abuse of discretion. In considering a hypothetical application of these standards to the Williams case facts, we thought we indicated that, had Ms. Stafford's order closing the bail-bond hearing been obliged to stand the test of these standards, it would not have passed it. In other words, we tried to say this: Had the standards been in force prior to Williams, and had Williams been before us in a posture where we could look to see whether or not the justice of the peace had abused her discretion (instead of being here on mandamus), she would have been held to have abused it when she closed the hearing without utilizing the various fair-trial safeguards available, as set out in the standards. We then went on to hold that  in view of the fact that she closed the hearing when there were no standards in existence  and in view of the fact that there was some evidence in the record upon which she could exercise discretion (i.e., she was in an abuse-of-discretion posture where mandamus could not reach her)  we would not disturb the closure order because of the statutory restriction against the utilization of mandamus to control the discretion of an inferior court judge. Having established standards for future guidance, the broad-scope effect of the Williams decision is the following: Mandamus will not intervene to control a minor court judge's discretion, but it will reach out to enforce a ministerial duty. That was the law before Williams  the rule of Williams  and it continues to be the law.
We envisioned in Williams that we would normally expect a closure question to come to us in an appeal posture where abuse of discretion could be examined as that issue is ordinarily considered in any other case where it is properly raised. Of course, since Harriscope chose to use the mandamus vehicle, that is not the way Feeney v. Spangler has come to this court. We held in Williams that when the abuse-of-discretion question was properly before us, we would then test that issue against the standards established in Williams. That is what we held in Williams, and that is what we will do if and when representatives of the public (including the news media) bring a case here in a posture that will permit us to so respond.
Feeney v. Spangler, coming here upon the wings of a writ of mandamus against which a petition for a writ of prohibition has been lodged, finds its disposal alongside Williams. That is  we are being asked to do that which the statute (§ 1-30-102, supra) forbids. Paraphrased, the majority in Feeney stands for the following:
(1) Wyoming has a statute (Section 1-30-102, supra) which says superior court judges cannot control the judging functions of a minor court judge's exercise of discretion with a writ of mandamus.
(2) With this statute in mind, we looked at the record in Feeney and found evidence there which, if admitted at the preliminary hearing, but excluded from the trial on the issue of guilt or innocence, would furnish the foundation for the exercise of judicial discretion in deciding a pretrial closure motion. We did not find that the evidence would, in fact, impair the fair-trial rights of the defendants. The opinion does not go that far. We did not decide whether the commissioner had or had not complied with *713 the Williams standards. We did not go that far. We just held that there was evidence in the record sufficient to allow the commissioner to exercise his discretion. This meant that mandamus was inappropriate unless there were overriding constitutional considerations.
(3) We then inquired of the relevant constitutional considerations for the purpose of determining that there were no provisions there to be found which  when applied to the facts of this case  rendered the statute (§ 1-30-102, supra) unconstitutional. We found none. Not only that, we found no case authority which holds unconstitutional a statute which prevents mandamus from controlling the outcome of a judicial decision where the judge is properly exercising his or her discretion. That mandamus cannot perform such a function seems to be the universal rule of law. (Parenthetically, how would lawyers and litigants react if we of this court were to presume to control the judging functions of the various district court judges without going through the appellate process? To ask the question is to answer it!!)
In any event, we then held that mandamus could not, under the condition of the record and the law, be utilized to control the exercise of Commissioner Feeney's judicial discretion.
We did not even consider whether Commissioner Feeney had or had not properly conformed to the standards of Williams. Under the circumstances, we had no authority to reach that question. We will reach that issue in every appeal that comes here where abuse of discretion is properly before the court (which is not the case in Feeney), but we will not permit writs of mandamus to stand where the only issue qualified for the court's consideration is whether or not the lower court justice had a right to exercise discretion, while the petitioner urges, as it does here, that the matter is really here upon the question of whether or not such officer abused his or her discretion (which is the case in Feeney v. Spangler).
How can we make it more clear? Mandamus cannot be utilized to test the abuse of discretion of a lower court judicial officer. The reason is that the statute says so. That is all the majority has said in Feeney. That is what we said in Williams, while, at the same time, using that case to establish standards for the use of Bench and Bar in the future when the question of abuse of discretion is properly before us.
We wish that the dissenters in the principal opinion and the petitioner here could make room for the fact that the majority opinion in the above-entitled matters is no more devious or complicated than that.
The petition is denied.
RAPER, Chief Justice, dissenting, with whom ROONEY, Justice, joins.
I would have granted a reconsideration of the majority's opinion.
My conviction persists that this court has given an overly narrow and ultimately incorrect interpretation to the mandamus statute. I remain attached to the views pressed in my original dissent. No amount of italicizing or exclamation points or charges of failure to understand can mask the fact that the majority is ignoring important, and in my view weighty authority that mandamus can and should be considered a proper vehicle for review of a determination to close a pretrial proceeding such as that in issue here. Moreover, the majority decision goes considerably further than simply holding that mandamus cannot be used in this case because of § 1-30-102, W.S. 1977. Before the question of discretion can even be considered, there must be a proper hearing, which there was not; and there must be evidence presented upon which to base closure, applying the ABA standards adopted by this court in Williams v. Stafford, Wyo. 1979, 589 P.2d 322, which there was not.
The phrase "* * * cannot control judicial discretion," in § 1-30-102 has reference to something entirely different than what is at issue in this case. That phrase was intended to insulate all inferior tribunals, including minor courts and minor *714 court officials from having their powers usurped by courts of superior power and authority. In other words, what the statute says is that if an inferior tribunal is invested with the power to exercise its discretion in some way, then a superior court cannot direct what that discretion should be. The superior court can force the inferior tribunal to act  but it cannot tell it how to act or make the decision for it. But the discretion indulged in must be an informed discretion.
In this case, close analysis reveals the following. The court commissioner has no discretion to grant or deny a hearing on the motion to close. If such a motion is made, a proper hearing must be conducted  there is no discretionary act involved in setting a hearing. Williams v. Stafford, supra. It is my threshold concern that no proper hearing was held in this case upon which to base any discretion. What the record reveals is half-hearted recognition by the court commissioner that some sort of hearing should take place. The problem is that the hearing held has no substance. The commissioner did little more than find out the basic facts of the case (the affidavit), state that he had considered the lessons of Williams v. Stafford, supra, and Gannett v. DePasquale, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608, and concluded that he would close the preliminary hearing. In my view, Williams v. Stafford requires considerably more than that, and it is this court's duty to spell out exactly what that is. It has in Stafford but then sidesteps it. I have already set out in detail, in my dissent to the original majority opinion, suggestions as to what should take place at such a hearing.
The majority concludes that evidence (the probable cause affidavit for issuance of an arrest warrant) was considered by the commissioner and that once he was presented with that evidence, however little and without any further evidence with respect to the adequacy of the alternatives, his discretion was called into play and thus this court's hands are tied until such time as this case reaches us on appeal  if it in fact ever does reach us on appeal. The minor courts are thus effectively insulated from this court's supervisory powers so long as they make a decision. As long as the "form" is present, the majority apparently will not concern themselves with the "substance." In all criminal cases, there will always be such "evidence" to present to the minor court at a preliminary hearing. According to the majority, that will similarly call into play its discretion (if it is, indeed, discretion at all).
Section 1-30-102 is not intended to hogtie the district court or this court if the lower tribunal abuses that discretion. Williams v. Stafford, supra, sets a very high standard for closure. Closure is the last recourse when the alternatives are not worthy of consideration. The county court here never looked at the alternatives. The commissioner had no evidence upon which to make a determination that this is an extraordinary case and that the alternatives to closure were out of the question. It is not a decision to be made lightly. We are talking about the exceptional or extraordinary case  about one where there is a clear and present danger to fair trial. There is no indication that this is an extraordinary case and closure cannot be avoided. If it is so simple as happened in this case to close a preliminary hearing, it can readily be visualized that the public and press could well find themselves locked out of our public courtrooms. Bench and bar will thus be free to conduct their affairs in the comfort of privacy. All this barricaded from our review and supervision because of a misreading of § 1-30-102.
If there is ever to be a review of such closure, it must be swift. Anything less is meaningless. Mandamus can readily be used to perform this vital task and we can still remain faithful to § 1-30-102. In so doing this court would not be controlling a lower tribunal's discretion  but only insisting that discretion be exercised without abuse. We would be controlling abuse of discretion not discretion. We must do that under our supervisory authority. In the face of statutes or ruling precedents that are similar, if not identical to § 1-30-102, numerous courts have applied mandamus to *715 correct a lower tribunal which has gone astray, as here.
Oregon has a statute quite similar to our § 1-30-102. See Or. Rev. Stat. § 34.110. That statute contains the language "* * * [mandamus] shall not control judicial discretion." However, the Oregon courts have held that an arbitrary abuse of discretion may be reviewed by way of mandamus even though the result is that the court is called upon to review the exercise of a discretionary power. State ex rel. Acocella v. Allen, 1979, 288 Or. 175, 604 P.2d 391, 395-396; Riesland v. Bailey, 1934, 146 Or. 574, 31 P.2d 183, 92 A.L.R. 1207.
Nebraska has a statute which also uses words which for the majority seem to possess some magic and be all encompassing  "* * * cannot control judicial discretion." See, Nebraska Reissue Revised Statutes of 1943, § 25-2156. Nonetheless, the Nebraska Supreme Court has utilized the mandamus vehicle to review an inferior court's abuse of discretion. State ex rel. Simpson v. Vondrasek, 1979, 203 Neb. 693, 279 N.W.2d 860, 864-865. Although the Nebraska case has to do with a factual situation considerably different from that at issue here, it does reveal the inherent versatility of mandamus.
Montana's mandamus statute does not contain the magic phrase, although, by its wording and interpretation, it is virtually the same as Wyoming's as well as the others discussed above. See § 27-26-102, Montana Code Annotated 1979; Cain v. Department of Health and Environmental Sciences, Mont. 1978, 582 P.2d 332. Nonetheless, Montana has allowed mandamus to be utilized to correct an abuse of discretion. See State ex rel. Diehl Company v. City of Helena, Mont. 1979, 593 P.2d 458, 463; Cain v. Department of Health and Environmental Sciences, supra.
There are numerous other appellate decisions which deserve scrutiny. I shall not dwell on them at length or attempt to explicate them further because, irrespective of whether these decisions rely on a statute or case law precedent, they are fairly uniform in their expression of the rule that mandamus can be used to correct an abuse of discretion even in face of the rule or a statute which states that mandamus cannot be used to control discretion. I also point out that the relatively brief list of cases which follows is only representative of cases on this subject. Additional cases can be found at West's Digest System, Mandamus, Key Numbers 28 and 61.
Agricultural Labor Relations Board v. Superior Court of Tulare County, 1976, 16 Cal.3d 392, 128 Cal. Rptr. 183, 546 P.2d 687, 693; Nathanson v. Superior Court of Los Angeles County, 1974, 12 Cal.3d 355, 115 Cal. Rptr. 783, 525 P.2d 687, 691; State ex rel. Green v. Superior Court in and for County of Pima, 1966, 3 Ariz. App. 473, 415 P.2d 487, 488; Hulme v. Woleslagel, 1972, 208 Kan. 385, 493 P.2d 541, 544-545; Gragson v. Toco, 1974, 90 Nev. 131, 520 P.2d 616; Chandler v. Ault, 1975, 234 Ga. 346, 216 S.E.2d 101, 102; State ex rel. Diners' Financial Corporation v. Swink, Mo. App. 1968, 434 S.W.2d 593, 596-597; State ex rel. Breno v. Industrial Commission, 1973, 34 Ohio St.2d 227, 63 Ohio App.2d 378, 298 N.E.2d 150, 152; East v. Todd, 1969, 284 Ala. 495, 226 So.2d 153, 156.
In this case, it is my view that this court is not asked to control discretion  it is asked to correct a gross abuse of discretion. There is nothing in this record to suggest that the statute is necessary. Even assuming that the facts did suggest that there might be some adequate reason for closure, the commissioner did not properly weigh the alternatives to closure in making his decision. Where the evidence presented in such a hearing suggest the propriety of closure, the decision to close should be made only if the necessity for it is clearly demonstrated and no alternative solution to closure is available.
Finally, it seems evident beyond argument that review of this question in the normal course of appeal is no remedy at all. If in fact this case ever reaches this court on appeal, the response of this court will come at a time when the battle is lost as far as closure is concerned. If petitioner can succeed on appeal in convincing this court that closure was improper, he wins an empty *716 victory which in practice may provide no protection at all when the question next arises. The First Amendment right has been lost forever.
ROONEY, Justice, dissenting.
I join in the dissent of Chief Justice RAPER, and additionally refer to the following general law:
"The discretion which cannot be controlled [by] mandamus is that discretion, and only that discretion, which the law has vested in the officer, to be exercised by him. The discretion must be exercised under the law, and not contrary thereto; it must not be arbitrary, vague, or fanciful but legal, regular, and sound discretion which must be governed by rule and exercised under established principles of law. Mandamus is a proper remedy if in the attempted performance of discretionary acts, the official abuses the discretion so as to amount to a failure to do the act as the law requires, or if by a mistaken view of the law there has been in fact no actual exercise in good faith of the judgment or discretion vested in the officer, or if an official or board acts so arbitrarily or capriciously that the court is justified in holding that no discretion was exercised * * *." (Emphasis and bracketed word supplied.) 52 Am.Jur.2d § 79, p. 401 (1970).
NOTES
[1] We said in Williams, supra:

"Writs of Mandamus, on the other hand, may direct an inferior tribunal to exercise its judgment but it may not control judicial discretion. Section 1-30-102, W.S. 1977. The function of mandamus is to command the performance of a ministerial duty which is plainly defined and required by law. Section 1-30-101, W.S. 1977; and LeBeau v. State ex rel. White, Wyo., 377 P.2d 302, 303 (1963). See, Philadelphia Newspapers, Inc. v. Jerome, 478 Pa. 484, 387 A.2d 425, 429, fn. 11 (1978), U.S. appeal pending 434 U.S. 241, 98 S.Ct. 546, 54 L.Ed.2d 506. The primary questions in this case, then, are two, namely does the Justice of the Peace have a clear duty to release the records of the closed bail-review proceedings, and secondly, do the petitioners have a clear legal right to inspect these records? ..."