On petition for alternative writ of mandamus filed February 10, petition denied
March 6, 2003

STATE EX REL METROPOLITAN
PUBLIC DEFENDER SERVICES, INC.,
an Oregon corporation,
*Plaintiff-Relator,*

*v.*

Honorable Peter COURTNEY,
President of the Oregon Senate,
and Honorable Karen Minnis,
Speaker of the Oregon House of Representatives,
for themselves and on behalf of all other members
of the Oregon Legislative Assembly,
*Defendants.*

(SC S50164)

64 P3d 1138

Don H. Marmaduke and Elden M. Rosenthal, Portland, filed the petition for plaintiff-relator.

Janet A. Metcalf, Assistant Attorney General, Salem, filed the memorandum in opposition for defendants. With her on the memorandum were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

William B. Crow and Christina Thacker, of Miller Nash LLP, Portland, filed a brief on behalf of *amicus curiae* Oregon Fellows of the American College of Trial Lawyers.

Before Gillette, Presiding Justice, and Durham, Riggs, De Muniz, and Balmer, Justices.*

DE MUNIZ, J.

---

\* Carson, C. J., did not participate in the consideration or decision of this case.

## DE MUNIZ, J.

This is an original mandamus proceeding brought in this court under ORS 34.120(2) and Article VII (Amended), section 2, of the Oregon Constitution. Relator is the principal provider of legal defense services to indigent persons accused of crimes committed in Multnomah, Washington, and Clackamas counties. Defendants are the presiding officers of the two houses of the Legislative Assembly and their legislative colleagues. Relator seeks an alternative writ of mandamus directing defendants to provide what relator characterizes as "adequate" levels of funding for relator and, as is more pertinent to this case, for the judicial branch. Relator alleges that the legislative branch presently has failed to provide such levels of funding and that, as a result, the judicial branch is being prevented from performing its core functions (including trying criminal cases involving indigent accused defendants).

■     There is no question that this court has the inherent power under the Oregon Constitution to ensure that the judicial branch operates as an independent branch of government, free from undue interference by the other branches. *See Rooney v. Kulongoski*, 322 Or 15, 28, 902 P2d 1143 (1995) (separation of powers seeks to avoid potential for coercive influence between governmental departments). This court has not, however, previously determined whether that inherent power extends so far as to permit this court to order the legislative branch to appropriate an amount of money deemed by this court to be minimally necessary to support this court's core functions.[1] Neither side of the present controversy, however, appears to question that this court's inherent

---

[1] Other courts have held that the power of the judicial branch does indeed extend that far. *See, e.g., Folsom v. Wynn*, 631 So 2d 890, 898-99 (Ala 1993) (inherent power of judiciary to assure adequate funding for itself stems from (1) its position as separate and coequal branch of government; and (2) fact that essential services are constitutionally required of judiciary on behalf of every person in each jurisdiction); *Judges For the Third Judicial Circuit v. County of Wayne*, 386 Mich 1, 14, 190 NW 2d 228, 231 (Mich 1971) (constitutional court possesses inherent power to sustain its existence); *State ex rel Durkin v. City Council of Youngstown*, 9 Ohio St 3d 132, 134-35, 459 NE 2d 213, 216 (Ohio 1984) (principle well established that administration of justice by judiciary cannot be impeded by other branches of government; courts' authority to effectuate orderly and efficient administration of justice without monetary limitations by legislature is within inherent powers of courts); *Commonwealth of Pennsylvania ex rel Carroll v. Tate*, 442 Pa 45, 57, 274

power extends to that exigency. Therefore, for purposes of this opinion, we assume that this court's power includes the authority to order the legislature to provide certain minimum levels of funding to sustain the core functions of the judicial branch. Nevertheless, we acknowledge that this court should exercise that power sparingly, such as in circumstances in which it appears that the ability of the judicial branch to perform its core functions is at stake. For the reasons that follow, we conclude that the showing that relator makes regarding the problems presently confronting the judiciary (and, indeed, state government as a whole) falls short of demonstrating that this is a case in which this court should exercise that inherent power.

■ Relator alleges that, as a result of defendants' budget actions, the Judicial Department has announced that, effective March 1, 2003, counsel will not be available for appointment to the following trial-level case types:

- All nonperson misdemeanors (adult and juvenile);

- All nonperson misdemeanor probation violations (adult and juvenile);

- All post-conviction relief cases;

- All adult nonperson felony probation violations;

- All adult contempts, except Family Abuse and Prevention Act (violation of a restraining order) and child support contempts;

- All adult nonperson class C felonies (generally, property and drug crimes);

- All adult possession of controlled substance felonies (including drug courts);

- All adult class A and B property felonies;

---

A2d 193, 199 (Pa 1971) (if legislature could not be compelled by courts to provide necessary funding for judiciary, then "judicial system could be extirpated" by legislature); *In the Matter of the Salary of the Juvenile Director*, 87 Wash 2d 232, 245, 552 P2d 163, 170-71 (Wash 1976) (separation of powers doctrine dictates that court possesses inherent power to protect itself in performance of its constitutional duties; it is not logical to conclude that constitution denies judges authority to determine basic needs of their courts).

- 80 percent of all adult person misdemeanor probation violations (reserving 20 percent for courts to be able to appoint counsel for the most egregious, high-risk cases);

- 80 percent of all juvenile person misdemeanor probation violations (reserving 20 percent, as above);

- 80 percent of all juvenile felony probation violations (assumes 20 percent are person felony probation violations); and

- All juvenile nonperson felonies.

According to relator, the Legislative Assembly has cut the Judicial Department's Indigent Defense Account budget so deeply that, after March 1, 2003, the Judicial Department will be unable to compensate indigent defense counsel in the kinds of cases set out above, thereby rendering the judicial branch incapable of performing its constitutionally mandated function of adjudicating whole categories of criminal cases. Relator contends that the failure to adjudicate those cases violates the Oregon Constitution's requirement that there be a separation of powers exercised by the legislative and judicial branches of state government.

Article III, section 1, of the Oregon Constitution provides:

"The powers of the Government shall be divided into three seperate (sic) departments, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

This court previously has not confronted a separation-of-powers claim based on an assertion that the legislature has not adequately funded the judicial branch. However, in a related context, this court has observed that

"[t]he power reserved to the judiciary by Art III, § 1, is neither absolute nor exclusive. As we said in a recent decision:

" 'The separation of powers principle cannot in practice work absolutely; there is a necessary overlap between the governmental functions. The rule has evolved that legislation can affect the practice of law so

long as it does not unduly burden or substantially inter-
fere with the judiciary.' *Sadler v. Oregon State Bar*, 275
Or 279, 285, 550 P2d 1218 (1976)."

*State ex rel Acocella v. Allen*, 288 Or 175, 180-81, 604 P2d 391
(1979); *see also State ex rel Huddleston v. Sawyer*, 324 Or 597,
617, 932 P2d 1145 (1997), *quoting State ex rel Frohnmayer v.
Oregon State Bar*, 307 Or 304, 310, 767 P2d 893 (1989) (exer-
cise of power constitutionally assigned to one branch of gov-
ernment often will have direct impact on another branch, and
determining such an impact does not, itself, violate the
constitution).

In *Circuit Court v. AFSCME*, 295 Or 542, 669 P2d
314 (1983), this court commented that, in evaluating a chal-
lenge under Article III, section 1, the appropriate inquiry is
whether the action of another branch of government has
interfered with the judiciary in a manner that prevents or
obstructs the performance of the judicial branch's irreducible
constitutional task. *Id.* at 550. *See also DeMendoza v.
Huffman,* 334 Or 425, 454, 51 P3d 1232 (2002), *quoting
AFSCME*, 295 Or at 551 (" '[o]nly an outright hindrance of a
court's ability to adjudicate a case * * * or the substantial
destruction of the exercise of a power essential to the adjudi-
catory function' will render legislation constitutionally defec-
tive under Article VII (Amended), section 1").[2] (Ellipses in
*DeMendoza*.)

■    Those holdings, although arising in different con-
texts, establish that, with respect to the judiciary, the sepa-
ration of powers principle is not offended by choices that the
other branches make, unless those choices unduly burden the
capacity of the judiciary to perform its core function.

The Oregon Constitution assigns the responsibility
for making fiscal appropriations and approving budgets to
the legislative and executive branches. The legislature must
weigh the competing fiscal demands of each branch of gov-
ernment, and the allocation of limited resources requires dif-
ficult choices. No court should consider challenging those

---

[2] Article VII (Amended), section 1, provides, in part:

"The judicial power of the state shall be vested in one supreme court and in
such other courts as may from time to time be created by law."

choices on separation of powers and inherent powers grounds, except under the circumstances already described.

We agree that the budgetary crisis currently faced by state government and, in particular, the judicial branch, is severe and that the consequences to the judiciary are unprecedented and regrettable. However, the budgetary reductions forced on the judicial branch, as alleged in relator's petition, have not and will not prevent the judicial branch from carrying out its core functions until the end of the biennium. That being so, the exercise, through mandamus, of the judiciary's inherent power (which, as noted, we assume to exist for the purpose of this opinion) is not yet warranted. We therefore deny the petition for an alternative writ of mandamus.

Petition for alternative writ of mandamus denied.